## FRANK WILLIAMS v. THE STATE.

No. 13058. Delivered March 19, 1930.
Rehearing denied April 30, 1930.
Reported in 27 S. W. (2d) 233.

The opinion states the case.

*Anderson & Jones* of San Angelo, for appellant.

*A. A. Dawson* of Canton, State's Attorney, for the State.

MORROW, PRESIDING JUDGE.—The offense is murder; punishment fixed at confinement in the penitentiary for a period of seventy years.

A synopsis of the State's testimony is as follows: . The deceased, Robert Thomas, in a Ford touring car, left the home of Viola Barber in San Angelo, Texas, about the 15th of June, 1928. He was a negro about 26 or 27 years of age and weighed about 135 or 140 pounds. Sometime during the month of July following, the body of a negro man was discovered in a dugout covered with boards and wrapped in an old quilt tied with a barbed wire on a ranch in Tom Green County known as the Smith Ranch. The body was decomposed to a great degree. There was evidence of violence. A shoulder bone appeared to have been broken. The clothing upon the body was removed by the sheriff and exhibited at the trial. The skull of the deceased was also exhibited at the trial. By circumstances the automobile belonging to the deceased was traced to the possession of the appellant while he was in the town of Rankin in Upton County, Texas.

The appellant made a written confession, which was introduced in evidence, in which he admitted that he was present at the time the deceased was killed but claimed that he did not take any part in the homicide; that the deceased was killed by one "Legs" in a fight; that Legs, appellant, deceased and others were engaged in gambling

and a quarrel arose over some irregularity; that a fight ensued between Legs and the deceased in which the latter was killed; that in the encounter another negro by the name of Choice took part and struck the deceased with the butt of a gun, breaking the stock of the gun. In his attempt to escape the deceased went into a chicken house where he was pursued by Legs and Choice, but not seen again by the appellant during the affray; that Legs and Choice then expressed the intention of killing the appellant; that he implored them to spare his life; that in so doing they threatened to kill him if he revealed their connection with the tragedy. Legs and Choice stated to the appellant that they had killed Thomas and were going to burn his body. Upon the suggestion of the appellant, they put the body in the car belonging to the deceased. They had no key but it was started by the appellant who used a file. Before getting into the car they were told by the appellant that he would show them a place where to hide the body. They went to a dug-out and tried to hide it by throwing boards over it. They rode in the car to the bus-line and then left the car in the possession of the appellant.

Viola Barber testified that she saw the deceased leave her home. She described his wearing apparel and his shoes and identified those worn by the deceased at the time he left her house. The skull of the deceased showing one of the teeth was also exhibited to her, she having testified that there was a peculiarity about his teeth.

Complaint of the receipt of the testimony of the witness Viola Barber is contained in bill of exception No. 1. We quote from the bill as follows:

"That while the witness Viola Barber was testifying in behalf of the State, and after having testified that she knew the deceased, Robert Thomas; that he had roomed at her house; that Mr. Herbert Smith brought some clothes to her house, she was asked this question by the State: 'Did you identify them?' To which question and answer thereto, the defendant objected for the reason that it would be stating a conclusion of the witness. Which objection was by the Court overruled, and the witness was permitted to and did testify over defendant's objections that when the deceased left he was in his shirt sleeves, wore a blue shirt, khaki pants and wore low quarter shoes. 'I know those clothes; I saw his clothes after he left my house that evening. They brought the clothes to my house for me to identify them; Mr. Herbert Smith brought the clothes there.' At which time several articles of clothing were exhibited to the witness in the presence of the jury and the witness testified

over the defendant's objection, that they were the clothes of the deceased, Robert Thomas. That Robert Thomas left her house on the evening of June 16th, and that those things were brought to her house sometime during the month of July."

In support of the bill, counsel for the appellant refers to the case of Anderson v. State, 214 S. W. 353; also Long v. State, 88 S. W. 203. Nothing in the cases mentioned is perceived which supports the position that the bill shows error.

"Clothing, letters, photographs or memoranda belonging to the deceased are admissible to identify the mutilated or charred body." (Underhill's Criminal Evidence, 3rd Ed., Sec. 495.)

The general statements and authorities cited in Underhill's Criminal Evidence, Secs. 108–109, are also deemed pertinent as supporting the ruling of the trial court.

Bill No. 2 touching the witness Viola Barber, contains the following:

"* * * and after having described the clothes he wore at the time he left her house about June 16, 1928, she was asked by the District Attorney: 'Was there any peculiarity about his front teeth?' 'How are those teeth commonly called; are they called dog teeth?' And in connection with said question, the District Attorney exhibited a skull to the witness in the presence of the jury and asked her this question: 'What are those teeth commonly called, are they called dog teeth?' And in pointing out and remarking to the witness: 'There is just one tooth left in this skull; how does this compare with the teeth of Robert Thomas?' "

It is thought that no error is shown.

"The structure and condition of the teeth of a deceased person, by reason of the imperishable nature of the materials which compose them, furnish an excellent means of identification. And a witness who was acquainted with the appearance and conformation of the teeth of the person in question may describe their condition of soundness or decay, and point out whatever he may have observed which was abnormal or peculiar in them, as, for example, fillings, etc." (Underhill's Criminal Evidence, 3rd Ed., Sec. 496.)

Bill No. 3 raises in substance the same question as Bill No. 2 above discussed.

Bill No. 4 is quite meagre. It simply states that the witness, Viola Barber, was asked the following question: "Look at this shoe; is that the shoe?" To which she answered: "Yes, that is one of his shoes." The bill seems to attempt to raise the same question that was discussed in Bill No. 1. However, no error is shown.

In Bill No. 5 it appears that Hewitt, the sheriff of Tom Green County, testified that while in his custody the appellant made the following declaration:

"The defendant made a statement to me with reference to whether Robert Thomas was living or dead. He said he was dead. He told me where he died. He said he died just back of the house in an old tin shed on Herbert Smith's ranch near San Angelo. He said we would find a pile of blood there with some chips over it and some tin over it. We found the blood with some chips over it and some tin over it, like he told us. And we found a clothes line cut. He showed us where the clothes line was. He also told me about taking an old quilt and putting it over the body, and we found it just like he said."

We understand from the testimony adduced upon the trial that the body of the deceased was discovered before the arrest of the appellant, but at that time the officers had no knowledge with which to identify the body; nor did they know where or how the deceased was killed. The declaration of which complaint is made was verified, according to the statement, by the finding of the pool of blood covered with chips and tin at the place where the appellant said the deceased was killed, and apparently comes within the exception mentioned in the statute requiring a written confession, which exception is in these words:

"* * * or, unless in connection with said confession, he makes statements of facts or circumstances that are found to be true, which conduce to establish his guilt, such as the finding of secreted or stolen property, or the instrument with which he states the offense was committed." (C. C. P., 1925, Art. 727).

The witness Lynn testified that he knew the appellant and that about the 17th or 18th day of June, 1928, he saw the appellant driving a Ford car which he told the witness he had bought for $150.00. The witness said:

"It looked like the same car that stands in the alley back of Mrs. Barber's house, but I don't know. It was Robert Thomas' car that stood back there in the alley and Robert's car was gone at that time."

The witness was then asked:

"What made you think it was Robert's car?" He replied:

"I thought it was Robert's car, because it had a spare on the side like Robert's did, and it had new balloon casings behind."

We fail to perceive error in the bill.

In his brief the appellant takes the position that the skull and shoes to which reference is made in some of the bills are not iden-tified as coming from the deceased. The bills fail to show that they were not identified; the statement of facts shows that they were.

The complaint of the introduction of the certificate showing the license number of the car which belonged to Robert Thomas, the deceased, so far as we can comprehend it, does not show error. However, the matter is of no weight for the reason that from his own testimony it was shown that the appellant was in possession of Robert Thomas' car.

Regarding the trial as having been legal and fair, and finding nothing warranting a reversal, the judgment is affirmed.

*Affirmed.*

## ON MOTION FOR REHEARING.

LATTIMORE, JUDGE.—Appellant urges error on the part of the trial court in not submitting in his charge to the jury offenses of less degree which might be included in a charge of murder. No basis for such complaint appears. No request was made of the trial court to submit such lesser offenses, nor was there any exception to the charge for its failure so to do.

Appellant also insists that the verdict fixing a penalty of seventy years is contrary to the evidence in that nothing shows the killing to have been upon malice aforethought, if committed by appellant at all. In this connection he also urges the insufficiency of the testimony generally, to show him guilty.

The court submitted the case upon the theory of circumstantial evidence. In making out its main case the State relied almost entirely upon proof of circumstances deemed sufficient to show appellant to be the party who committed the alleged murder. However, there was testimony from the sheriff and another witness to the effect that appellant told them that he held a gun on deceased while another man beat him to death. It was shown that shortly after the disappearance of the deceased appellant showed up in possession of the car of deceased, same being claimed by appellant as his by purchase, and that appellant disposed of the body and casings of the car as his property. Appellant took the witness stand in his own behalf and testified to his presence at the time of the killing. He asserted that said homicide was committed by a man named Legs, and that any apparent connection with the concealment of the crime by the removal of the body and hiding it, was participated in by appellant, if

at all, under coercion and as a result of threats against him. He admitted his association with Legs and the other men who were present in a gambling game which he said led up to the killing. He admitted the appropriation of the car of deceased, which he claimed he thought belonged to the man Legs. He testified to accompanying Legs and the other parties from the house where the killing occurred to the place where the body was covered with a quilt and some boards and left in an outhouse. He admitted going with the others and drinking with them, and remaining with them for some time afterward, and claimed that he then borrowed the car in question from Legs and took it to the town of Rankin, some one hundred miles from the scene of the killing, where, according to the State witnesses, he disposed of the body and other parts of the car to some Mexicans. After appellant concluded his testimony, the State introduced in evidence appellant's written confession in which he made statements contradictory of other testimony appearing in the record, said confession appearing to throw doubt upon appellant's intentional and purposed connection with the killing.

We are of opinion that the State made out a case of murder against appellant entirely aside from the facts appearing in the confession. There is nothing in the record which sheds light on the State's purpose in introducing the confession. No request for any charge concerning same appears in the record, nor any exception to the court's charge for its failure to instruct the jury regarding the effect of any statements made in such confession. We regard the testimony as sufficient to make out a case against appellant by circumstances, showing him guilty as a principal offender in the murder of deceased. If the murder was committed for gain or profit, or to obtain the car or property of the deceased, this would sufficiently support the conclusion of a killing upon malice aforethought. There is nothing in the record to suggest that the mind of appellant was in any such condition for any reason as that he could not entertain or be moved by malice. Nor do we think the statements of appellant in the confession referred to are of such nature or so bind the State as to prevent or interefere with the jury's right to accept as sufficient the inculpatory evidence relied upon to show appellant guilty of the murder.

The motion for rehearing will be overruled.

*Overruled.*