Michael Edward CHASE, Appellant,

v.

The STATE of Texas, Appellee.

No. 46796.

Court of Criminal Appeals of Texas.

Jan. 16, 1974.

Rehearing Denied May 15, 1974.

Emmett Colvin, Jr. and Lawrence B. Mitchell, Dallas (both on appeal only) for appellant.

Henry Wade, Dist. Atty., W. T. Westmoreland, Jr., Asst. Dist. Atty., Dallas, Jim D. Vollers, State's Atty., Buddy Stevens, Asst. State's Atty., Austin, for the State.

## OPINION

DAVIS, Commissioner.

Appeal is taken from a conviction for murder. Penalty was assessed by the jury at life.

While the sufficiency of the evidence is not challenged, a brief recitation of the events which give rise to appellant's grounds of error is deemed necessary in order that appellant's contentions may be discussed with greater clarity.

Appellant, a seventeen-year-old high school student, lived with his parents in Dallas.

The appellant and the deceased, a schoolmate, attended a party on the night of August 21, 1970. The deceased was to spend the night with appellant and they left the party together. Appellant's parents were away from home for the night.

On August 24, 1970, the body of the deceased was found on the bank of the Trinity River. The body was encased in a green sleeping bag. A large rope was bound around the body.

Appellant gave officers a written statement on September 4, 1970, that deceased had been at his home on the night of August 21, 1970.

On September 10, 1970, at a time when the State contends that its investigation had not focused on appellant, a search was made of appellant's home without a warrant.

On September 14, 1970, an arrest warrant issued and appellant was taken into custody. A short time after his arrest, appellant made an oral confession to officers.

On October 7, 1970, a search warrant was obtained and appellant's home was searched for the second time.

■ At the outset appellant contends that the trial court lacked jurisdiction over the appellant in that Article 2338–1, Vernon's Ann.Civ.St., denied the appellant the equal protection of the law guaranteed by the Fourteenth Amendment to the Constitution of the United States in establishing a different age requirement for conferring juvenile jurisdiction for males than females.

Appellant, a seventeen-year-old male at the time of the alleged offense on August 22, 1970, urges that had he been a female rather than a male, the applicable law [1] at the time in question would have required that the case pending against him be transferred to the juvenile court.

This court's decision in Ex Parte Matthews, Tex.Cr.App., 488 S.W.2d 434, is dispositive of appellant's contention. While Ex parte Matthews, supra, held that the disparity in the age classification between males and females was unconstitutional, this court went on to hold that every person was amenable to punishment under the Penal Code (Article 29, Vernon's Ann. P.C.) except persons under the age of fifteen (Article 30, Section (a)(1), V.A.P.C.) after excising the seventeen-eighteen year old classification from Article 2338–1, V. A.C.S., and Article 30, V.A.P.C. Thus, the court had jurisdiction of appellant in the instant case. See Hill v. State, Tex.Cr. App., 504 S.W.2d 484 (1974).

■ Appellant contends that the court erred in admitting an oral confession in that such confession did not comply with the requirements of Article 38.22, Section 1(e), V.A.C.C.P.

Appellant urges that while his oral confession may have been explanatory it did not lead to any of the instrumentalities of the crime and is therefore inadmissible.

The pertinent portion of Article 38.22, V.A.C.C.P., provides:

"1. The oral or written confession of a defendant made while the defendant was in jail or other place of confinement or in the custody of an officer shall be admissible if:

". . .

---

1. Prior to November 1, 1972, Article 2338–1, Section 3, V.A.C.S., established the age requirements that placed a person within the jurisdiction of the juvenile court by defining "child" to mean any female person over the age of ten years and under the age of eighteen years and any male person over the age of ten years and under the age of seventeen years.

Effective November 1, 1972, Article 2338–1, Section 3, V.A.C.S., was amended defining the word "child" to mean any person over the age of ten years and under the age of seventeen years.

"(e) It be made orally and the defendant makes a statement of facts or circumstances that are found to be true, which conduce to establish his guilt, such as the finding of secreted or stolen property, or the instrument with which he states the offense was committed."

Pursuant to an arrest warrant, appellant was taken into custody on September 14, 1970. After being arrested at the school he was attending, officers read appellant the "Miranda" warnings and, according to the officers, appellant stated he understood them. After entering the squad car, appellant made an oral confession in which he stated that a bayonet was the murder weapon; that a rope was taken from the carport at appellant's home which was used to bind the deceased; that the plywood board found with the body was a table top that came from his younger brother's room and that the sleeping bag the body was found in belonged to a friend.

After arrival at the sheriff's office, appellant was taken before a justice of the peace and from there to an interview room where the oral confession continued. Appellant stated that he and the deceased went to appellant's home after a party. According to Officer Williamson, appellant related that he and the deceased had an argument, but appellant would not talk about the incident surrounding the death of the deceased. Appellant stated that when he awakened the next morning, he found the deceased lying on the floor; that appellant went to the carport and got a sleeping bag and the rope and after placing the deceased in the sleeping bag he dragged the body to a tin shed behind the house.

Later, appellant returned to the shed, placed the deceased in the bed of a pickup, covered the body with a piece of plyboard and drove to the river. Upon arrival at the river, appellant placed the deceased on the plyboard and dragged deceased to the water. After deceased was placed in the water, appellant put the plyboard over him.

Appellant argues that the officers already had all of the instrumentalities of the crime in their possession and nothing was recovered as a result of the oral confession. The sleeping bag and the plyboard were found with the body. A piece of rope and the bayonet were recovered in the officers' search of appellant's home on September 10, 1970.

In Ashley v. State, Tex.Cr.App., 362 S. W.2d 847, cert. denied 372 U.S. 956, 83 S. Ct. 955, 10 L.Ed.2d 10, defendant contended that no proper predicate had been laid authorizing the admission of an oral statement because the officers already had the deceased's automobile in their possession. After defendant's arrest, defendant's purse was emptied on a desk and defendant stated that keys emptied therefrom belonged to deceased's automobile. The keys were subsequently determined to fit deceased's automobile. This court found that such evidence was sufficient to show that the automobile had been under the control and in the possession of the defendant. The court went on to hold that the oral statement made at the time defendant identified the keys as belonging to deceased's vehicle was, under the facts and circumstances of the case, authorized to be admitted into evidence.

In Valtiero v. State, 153 Tex.Cr.R. 260, 219 S.W.2d 73, where a hat belonging to the victim was discovered by following the defendant's directions, this court said:

"The facts here present demonstrate that facts and circumstances may be stated by an accused which unquestionably are inculpatory and conduce to establish his guilt, and yet neither lead to the recovery of stolen property, or the instrument with which the offense was committed."

The facts found to be true must be incriminating. Shelton v. State, 168 Tex. Cr.R. 432, 328 S.W.2d 445. When the facts or circumstances asserted have not led to the discovery of items or informa-

tion previously unknown to the State, confessions have been held inadmissible. Taggart v. State, 149 Tex.Cr.R. 91, 191 S.W.2d 728; Willoughby v. State, 87 Tex.Cr.R. 40, 219 S.W. 468; Baggett v. State, 65 Tex. Cr.R. 425, 144 S.W. 1136. When, however, the statement of the accused has led to the discovery of items or information not theretofore discovered by the State, the "found to be true" requirement of Article 38.22, Section 1, V.A.C.C.P., has been satisfied. Wilson v. State, Tex.Cr.App., 473 S.W.2d 532 (recovery of stolen vehicle); Ashley v. State, supra (identification of keys in defendant's possession); Stelman v. State, 123 Tex.Cr.R. 330, 58 S.W.2d 831 (location of victim and victim's wound); Sweat v. State, 115 Tex.Cr.R. 130, 29 S. W.2d 756 (location of burglary and identification of stolen property); Williams v. State, 115 Tex.Cr.R. 28, 27 S.W.2d 233 (location of murder).

The foregoing authorities dictate that Article 38.22, Section 1(e), V.A.C.C.P., requires that some evidence be found as a result of the defendant's statement which bolsters the reliability of the facts and circumstances in the statement that conduce to establish guilt.

In appellant's oral statement to the officers the plyboard which was found with deceased's body was described by appellant as having come from his brother's room; that it was a table top and the hinges on the board supported it against the wall; and the metal eye hooks on the board were hooked to chains. When the officers went to appellant's home on October 7, the plyboard was taken to appellant's brother's room. The plyboard was found to fit up to the wall with chains fastened thereto just as appellant had described in his oral confession. Photographs were taken of the plyboard attached to the wall and introduced into evidence.

The information obtained from appellant and confirmed by the officers taking the plyboard to appellant's home is like the identification and determination of the origin of the keys in Ashley v. State, supra. The origin of the plyboard was unknown to the officers prior to appellant's statement and the determination of the truth of such statement conduced to establish appellant's guilt. Under these facts and circumstances, the appellant's oral statement was authorized to be admitted into evidence.

■ Appellant next contends that his oral confession was inadmissible in that there was no showing that the arrest warrant was based on probable cause.

The record reflects that the court granted appellant's motion to discover the warrant of arrest for appellant and the affidavit in support thereof.

The sole thrust of appellant's argument is that the State failed to establish, after due objection, that the arrest warrant was based on probable cause and therefore the oral confession should have been suppressed.

In support of his contention, appellant points to the testimony of Officer Williamson:

"Q. . . . I will ask you if you were present when Mr. Oxford of the Dallas Sheriff's office swore out an affidavit charging Michael Edward Chase with the murder of Reuel Dean Hanks?

"A. I was.

"Q. All right. I will ask you as a result of the affidavit that was filed in support of his accusation if an arrest warrant was issued.

"A. It was."

Appellant calls our attention to another place in the record where the same information was elicited from Williamson and due to the fact that the testimony does not vary in any material respect it will not be repeated.

The trial court, in its findings of fact and conclusions of law in overruling appellant's motion to suppress the oral confes-

sion, found (among other findings) ". . . there is no evidence to show that the affidavit upon which the arrest warrant is founded contains warrants sufficient to qualify as probable cause to issue the said warrant. The court further finds that the detention of the defendant, Michael Edward Chase, was in fact lawful despite the defective arrest occurring at its inception."

In Lacefield v. State, Tex.Cr.App., 412 S.W.2d 906,[2] it was held that a confession otherwise shown to have been voluntary is not rendered inadmissible by the fact that the accused was under arrest or in custody at the time, even though the arrest may have been under invalid process or without any process or legal right. See De Leon v. State, Tex.Cr.App., 466 S.W.2d 573; Randolph v. State, Tex.Cr.App., 493 S.W.2d 869. Appellant does not claim nor does the record reflect that the statement was not voluntary. It is not disputed that appellant was properly warned before making the oral statement. The evidence supports the court's finding that there was ample reason to detain appellant and that his detention did not vitiate the confession. The record does not demonstrate, nor is it contended that appellant was held incommunicado for an extended period of time, denied food or drink or critically deprived of his capacity for self-determination. Coercion has not been urged or established.

We hold that the trial court's findings that the oral confession was admissible are supported by the evidence.

■ Appellant next contends that evidence was seized on October 1 at appellant's home pursuant to search warrant which was based upon an affidavit which failed to show probable cause.

The search warrant and affidavit are in the record and are, therefore, properly before the court for review. The affiant, Officer Oxford, recites in the affidavit that he was in appellant's home on September 10, 1970, in connection with the investigation of the death of the deceased and while there observed a hemp rope approximately ¾ inch in diameter and 15 to 18 feet in length. The affidavit further sets out the warning given appellant before he made an oral statement on September 14, 1970, in the presence of affiant and then states: "He [appellant] then stated that the above rope was used by him in connection with the murder of Reuel Hanks." Affiant concludes, "I do believe the above described rope is an instrumentality of the crime of murder and is presently located at the above described premises."

Appellant urges that the affidavit and warrant call for a search of "mere evidence" and that such a search is not authorized under Article 18.01, V.A.C.C.P.,[3] the pertinent portion of which reads:

"A 'search warrant' is a written order, issued by a magistrate, and directed to a peace officer, commanding him to search for personal property, and to seize the same and bring it before such magistrate; or it is a like written order, commanding a peace officer to search a suspected place where it is alleged stolen property is commonly concealed, or implements kept for the purpose of being used in the commission of any designated offense."

Appellant argues that since the crime in question had already been committed the rope from which a piece was used to dispose of the body of the deceased was not an implement "kept for the purpose of

---

2. In Lacefield v. State, supra, this court, speaking through now Presiding Judge Onion, pointed out that state and federal courts have had occasion to pass on the contention that a confession following an illegal arrest is ipso facto inadmissible under Wong Sun v. United States, 371 U.S. 471, 83 S.Ct. 407, 9 L.Ed.2d 441, and that such contention has been generally rejected. See numerous federal and state cases cited in Lacefield v. State, supra.

3. Article 18.01, V.A.C.C.P., "Search Warrant," and Article 18.02, V.A.C.C.P., "Grounds for Issuance," were amended by the 63rd Legislature, effective January 1, 1974.

being used in the commission of any designated offense."

Under the narrow construction of Article 18.01, V.A.C.C.P., urged by appellant, officers would be precluded from obtaining a search warrant for a bottle of poison from which a fatal dose was administered. Such a strict construction of Article 18.01 is not in harmony with Article 1.26, V.A.C.C.P., providing:

"The provisions of this Code shall be liberally construed, so as to attain the objects intended by the Legislature: The prevention, suppression and punishment of crime."

Further, precedent does not require such an unnecessarily strict construction as urged by appellant.

In Cagle v. State, 14 Tex.Cr.R. 354, 180 S.W.2d 928, where a search warrant issued for implements used in aiding in commission of offense of keeping a policy game, this court held that a book containing social security numbers of employees of defendant seized in the search should have been excluded, saying:

"We are at a complete loss to discover how it would be possible for a book containing social security numbers of purported employees to be used in conducting a policy game, or to be classed as an implement for such purpose."

This court in *Cagle* went on to say:

" . . . if property was seized *which was not used or usable in committing the offense* but was only of evidential value in establishing accused's guilt of the crime charged, such evidence should, upon objection thereto, have been excluded." (Emphasis supplied.)

The distinction between Cagle v. State, supra, and the instant case is apparent.

While records of social security numbers of defendant's employees could not be used

in committing the offense of conducting a policy game, the rope from which a piece was taken to bind the deceased's body was property "used or usable in committing the offense" of murder.

We reject appellant's contention that the affidavit did not furnish probable cause for issuance of the search warrant.

■ Appellant contends that the officers went beyond the scope of the search warrant in placing a plyboard (found near deceased's body) against a wall in appellant's home, matching the screw holes in the board with those on the wall, attaching chains on the wall to the board and photographing the "fitting." Pictures of the board positioned against the wall were introduced into evidence. Appellant urges that obtaining the search warrant for the rope was a "ruse" for the officers to accomplish the "fitting" of the board to the wall.

Having heretofore determined that the search warrant was valid, the officers were legally upon the premises and the warrant did not restrict the portion of appellant's home they were to search.

In Tocher v. State, Tex.Cr.App., 501 S.W.2d 921 (1973), it was contended that photographs taken at the scene where a murder occurred "were not within the scope of the search warrant issued by the Justice of the Peace, since they were not 'weapons and implements' of the crime as stated in the search warrant."

As in *Tocher,* the officers were on the premises pursuant to a search warrant, the pictures taken reflect nothing more than the officers were able to observe at the scene, and there is nothing to indicate that the wall depicted was in any way obscured from the view of the officers as they conducted a search through appellant's home.[4]

We conclude that the taking of the complained of pictures did not constitute a

4. The record reflects that the officers were unable to find the rope which was the subject of the search warrant.

search and seizure within the meaning of the Fourth Amendment. See Tocher v. State, supra, and cases cited therein.

■ In his last contention appellant contends that the court erred in admitting evidence seized at appellant's home on September 10, 1970, in violation of appellant's Fourth and Fourteenth Amendment rights.

The record reflects that officers went to appellant's home on September 10, 1970. According to the officers, appellant was not a suspect at this time. Upon arrival at appellant's home, the officers told appellant's parents that they had come to a "dead-end" in the investigation of the deceased's death and that they wanted to see the rooms that appellant had earlier described in an affidavit given them. Officer Williamson testified that appellant's parents were very cooperative and appellant's father said "we could do anything we wanted to in the house." The officers advised appellant's parents that they would like to bring Officer Kitchen from the Crime, Scene and Search Section to the house and appellant's father responded, "You can bring anyone you want to out. You can do anything you feel is necessary for the investigation." Appellant was present a portion of the time and, according to Williamson, appellant showed them through the house.

The thrust of appellant's contention is that the State has not sustained its burden of showing that a valid waiver of a constitutional right was given. In support of this contention appellant points to the fact that appellant's parents were not informed of their right to refuse the search and urges that a person must be informed that consent can be withheld before there can be a valid consent.

In Schneckloth v. Bustamonte, 412 U.S. 218, 93 S.Ct. 2041, 36 L.Ed.2d 854 (1973), as in the instant case, the party alleged to have given the consent was not advised that he had a right to refuse to consent. The United States Supreme Court said:

"Voluntariness is a question of fact to be determined from all the circumstances; and that, while the subject's knowledge of his right to refuse is a factor to be taken into account, the prosecution is not required to demonstrate such knowledge as a prerequisite to establishing a voluntary consent." See Lowery v. State, Tex.Cr.App., 499 S.W. 2d 160; Cole v. State, Tex.Cr.App., 484 S.W.2d 779; De Voyle v. State, Tex.Cr. App., 471 S.W.2d 77.

The instant case is unlike Bumper v. North Carolina, 391 U.S. 543, 88 S.Ct. 1788, 20 L.Ed.2d 797 (1968); Lowery v. State, Tex.Cr.App., 499 S.W.2d 160; Paprskar v. State, Tex.Cr.App., 484 S.W.2d 731, where coercive factors were present in obtaining consent to search.

After reviewing the circumstances surrounding the giving of the consent to search, we conclude that the trial court's findings in admitting the evidence found at appellant's home on September 10, 1970, are supported by the evidence.

Arguments advanced in appellant's pro se brief have been disposed of under contentions discussed in this opinion.

Finding no reversible error, the judgment is affirmed.

Opinion approved by the Court.