## FRANK DAGGETT V. THE STATE.

No. 1552.   Decided February 9, 1898.

Motion for Rehearing Decided March 2, 1898.

### 1.   Burglary—Indictment—Ownership.

Where the burglarized house was a chicken house belonging to one D., who did not live near the premises, but who purchased the fowls, while one J. was employed at a monthly salary to look after them, with the understanding that J.'s wife was to get part of the increase, Held, the possession of J. was mere custody and that of a servant, and the indictment correctly alleged the ownership of the chicken house in D., and not in J.   [But see paragraph 6, below.—Reporter.]

### 2.   Same.

Upon the facts above stated, had there been a joint ownership in the fowls, the ownership might have been alleged in either D. or J., but there was no joint ownership, because Mrs. J. had only an interest in the increase of the fowls.

### 3.   Confession—Finding Fruits of the Crime by Means of.

Confessions of a defendant are admissible in evidence where fruits of the crime are found in pursuance of said confession.   It is not necessary that these fruits be found in the exact place as stated by defendant, provided they were traced directly from that place to the locality where found under circumstances showing that they had been moved from where they had been left by defendant.

### 4.   Practice—Rereading Charge After Correcting It.

It is not error for the court to reread the charge to the jury after it has been corrected.

### 5.   Burglary—"Breaking"—Charge.

On a trial for a nighttime burglary, it is not error for which defendant can complain that the court charged the jury:  "It is not necessary that there should be any actual breaking to constitute the offense of burglary, except where the entry is made in the daytime, in which case, there must be an actual breaking, and 'breaking' means that the entry must be made with actual force."

**6.  Burglary—Allegation of Ownership—Temporary Custody or Actual Care and Control of Servant—Variance.**

In burglary, if the bare custody, etc., of the house is in a servant, or agent, only temporarily at the time of the burglarious entry, the indictment should lay the ownership in the master or general owner, ignoring the possession of the servant. But where the owner resides some distance, and on a different place from the premises, and said premises, with the property in the house, are all in the immediate possession and under the exclusive management, care, and control of an agent or servant, the latter is the special owner, and the indictment in such case should allege ownership in such special owner. And if the ownership is alleged in the general owner and the proof shows such special ownership, the variance will be fatal.

**7.  Charge of Court as to Conflict in Testimony.**

Where the court in its charge, among other things, in effect, instructed the jury to reconcile the testimony if they could, but if there were irreconcilable conflicts, to decide which of the testimony was entitled to be believed, and in so determining to consider the intelligence, interest, apparent bias, or prejudice, if any, of the witnesses, as well as their manner of testifying; Held, a charge upon the weight of evidence, and especially so where the defendant had testified in his own behalf as a witness in the case. Following Harrell v. State, 37 Texas Crim. Rep., 612.

APPEAL from the District Court of Tarrant. Tried below before Hon. W. D. HARRIS.

Appeal from a conviction for burglary; penalty, two years imprisonment in the penitentiary.

The indictment alleged the ownership of the burglarized house, and of the property stolen therefrom, to be in John P. Daggett. The house burglarized was a chicken house, and the property taken therefrom was four turkeys and eight fine bred langshan chickens. The chicken house was situated upon a ranch owned by Daggett, but was some seven or eight miles from his place of residence, and was entirely separate and distinct from his place of residence, the intervening lands being owned by other parties. Daggett had hired one Ed Jahn to take charge of his ranch and the personal property thereon, including the chickens and turkeys. He paid Jahn $18 per month, and Mrs. Jahn was to have one-half of the increase of the chickens and poultry. Jahn conducted the management of the ranch according to Daggett's orders—Daggett frequently going out to the ranch at intervals of two or three weeks. The chicken-house was burglarized, and the chickens and turkeys stolen therefrom on night of the 15th or 16th of December. The two negro boys, Sim Daggett and Frank Daggett, this defendant, whose father had been a slave belonging to the Daggett family, were arrested a day or so after the burglary, and, after being warned by the officers, confessed that they had burglarized the house and stolen the chickens and turkeys, and had carried them some six miles that night and put them in the smokehouse belonging to a man by the name of Burns. After the officers had placed the parties in jail they went to the house of Burns and searched the smokehouse, but the chickens and turkeys were not there; but they found chicken and turkey feathers in the smokehouse, and also a path leading from the smokehouse into a thicket. In this thicket they found two boxes turned over, and in the boxes they found the chickens

and turkeys. They took them to John P. Daggett, who identified them as his property and sent them back to his ranch.

As to the possession of the property, the court instructed the jury as follows: "Possession of property, within the meaning of the law of theft, is constituted by the exercise of actual control, care, and management of the property. A person has actual control, care, and management of property when his will and his dictation and his direction and his instruction with reference to the same in the details of its supervision and use and care are executed, whether executed by himself personally or by some one in his employ and acting under his direction. If a person be simply the owner of property, but the will and dictation and direction and instruction of some other person with reference to the same in the detail of the supervision and use and care given to and mode of the same are executed by such other person or some one else, then the actual control, care, and management is in such other person."

The court also instructed the jury: "It is your duty to reconcile the conflicts, if any, in the testimony, if you can; but if you can not, then you must decide which of the testimony is entitled to the greater credibility and weight, and in so determining you may consider the intelligence, interest, apparent bias or prejudice, if any, of witnesses as well as their manner of testifying."

·*O. S. Lattimore* and *R. E. T. Roy*, for appellant.

*Nat P. Jackson* and *Mann Trice*, Assistant Attorney-General, for the State.

HENDERSON, JUDGE.—Appellant was convicted of burglary, and his punishment assessed at two years confinement in the penitentiary, and he prosecutes this appeal.

Appellant claims that there is a variance between the allegations of the indictment and the proof as to the ownership of the alleged burglarized house. The proof shows that the house entered was a chicken house, situated on the ranch of John Daggett, about seven or eight miles from his residence; that Ed Jahn was employed by him at a salary of $18 per month; that, among other things he was employed to look after, were a number of fowls, consisting of turkeys and chickens, which the said John Daggett bought and placed on the premises, with the understanding that Jahn's wife was to get a part of the increase. The possession of Jahn, under the testimony, was a mere custody, as that of a servant. The allegation of the indictment was correct. See Graves v. State (Texas Crim. App.), 42 S. W. Rep., 300. These observations apply in regard to the ownership of the house, and, in addition thereto, if there was a joint ownership in the fowls, then the property could be alleged in either; but there was not a joint ownership in these fowls, because Mrs. Jahn could only have a part of the increase.

Appellant also contends that the confessions of the appellant were

inadmissible, because he was not properly warned. We think that the testimony shows that he was properly warned. Not only this, but the confessions were admissible on another ground. The fruits of the crime were found in pursuance of the confessions of the appellant. True, the property was not found in the exact place as stated by the appellant, but evidently it had been there, and was left there by the appellant, because the smokehouse contained a lot of feathers, identified as belonging to the chickens and turkeys taken. They had doubtless been moved from there a short distance by others after the arrest of the appellant, but they were traced from the smokehouse to a thicket near by, on the premises of Burns, where appellant stated they would be found. But for this statement, that they were on Burns' premises, there is no suggestion that search would have been made there by the officers for the lost property.

There is no error in the court rereading the charge as corrected by him. There was no occasion to give the special charge requested, as all the facts in the case had been properly covered by the court's charge. As applied to the facts of this case, the special charge given by the court as to the definition of actual care, control and management was not calculated to injure appellant. Nor was there any error in the definition of the court of a breaking—in defining the same as applied to a daytime entry. The character of force is the same. The judgment is affirmed.

*Affirmed.*

MOTION FOR REHEARING.

*O. S. Lattimore*, for appellant.—This court should have reversed this case because the court below gave in his charge to the jury that which was fundamental error, and a charge on the weight of the evidence, as shown by defendant's first assignment of errors, no mention of which is made in this court's findings.

The giving of this charge was fundamental error, even though the question be first raised by defendant's assignment of errors. See Isham v. State, 41 S. W. Rep., 622.

2. This court erred in holding that the charge of the court below as to what would be actual care, control, and management as shown by defendant's bill of exceptions number 5 and his second assignment of errors.

Wherefore the court is respectfully asked to grant to defendant a rehearing, and to reverse this cause and remand same for a new trial.

ON MOTION FOR REHEARING.

HENDERSON, JUDGE.—This case was affirmed at a previous day of this term, and now comes before us on motion for rehearing. Appellant insists that the evidence does not support the allegation as to possession

of the alleged burglarized house, and the property therein situated, in John P. Daggett, as charged in the indictment. On a review of the evidence in this respect, we agree to this contention. Some of the cases go to a considerable extent towards holding that the possession of property can be alleged in the owner, however remote he may be from the property itself, and although another is charged with the immediate custody of the same. All these cases are based on the idea that the custodian is the agent or servant of the owner, and holds the bare custody of the property. It is sometimes difficult to determine how far this principle extends. In Graves v. State (Texas Criminal Appeals), 42 Southwestern Reporter, 300, we believe this doctrine was carried as far as it can be reasonably extended. If the person holding possession of the property for the owner has a bare custody, and not a disposition of the property, and this is merely temporary—if he is a mere servant of the owner—the possession may well be alleged in the owner of the property, ignoring the possession of the servant. But that does not appear to be this case. It is true that Ed Jahn was in the employ of John P. Daggett, but he was not located on the same place where John P. Daggett resided. He had charge of the place of the said John P. Daggett, situated some eight miles from where he lived. He appears to have had full management of said place, and all the property thereon situated. The owner of the place, John P. Daggett, visited said premises only occasionally. The fowls and chicken house in question were in the immediate possession of Ed Jahn, and they were looked after and attended to exclusively by said Ed Jahn and his wife. The latter, according to the testimony, had an interest in the increase of the fowls. The house alleged to have been burglarized was a small chicken house, in which these fowls roosted. Jahn was in the habit of closing up the door of said chicken house each night. The testimony shows that on the night in question one Priest, who was in his employ, fastened the door with a latch, and he also placed a rock against it. Under such conditions the proof did not sustain the allegation of possession in John P. Daggett. See Scott v. State (Texas Crim. App.), 43 S. W. Rep., 336. The indictment was in two counts. One charged the ownership and possession in John P. Daggett, and the second count charged the possession and ownership in John H. Jahn. We presume the pleader in the second count intended to charge the ownership and possession in Ed Jahn, but made a mistake in the initials. The conviction was under the first count of the indictment.

Appellant also complains of the court's charge instructing the jury as to the rule by which they were to pass on the credit of the witnesses. Among other things, it instructed them to reconcile the testimony of the witnesses if they could. If there were irreconcilable conflicts, then they were told to decide which of the testimony was entitled to be believed by them, and, in so determining, to consider the intelligence, interest, apparent bias or prejudice, if any, of the witnesses, as well as their manner of testifying. Appellant was a witness in his own behalf. This

charge was upon the weight of the testimony. See Harrell v. State, 37 Texas Crim. Rep., 612. No exception was taken to this charge, and our attention is called to it for the first time on motion for rehearing. The case was tried before the new law on the subject of charges went into effect. We hold that the charge was erroneous. The motion for rehearing is granted, the judgment reversed, and the cause remanded.

> *Motion granted.*
> *Judgment reversed and remanded.*