David Isidor PORT, Appellant,

v.

The STATE of Texas, Appellee.

No. 1187–87.

Court of Criminal Appeals of Texas, En Banc.

April 25, 1990.

Rehearing Denied June 27, 1990.

Jack B. Zimmermann, Albert M. Dworkin, Houston, for appellant.

John B. Holmes, Jr., Dist. Atty. and Timothy G. Taft and Keno Henderson, Asst. Dist. Attys., Houston, Robert Huttash, State's Atty., Austin, for the State.

## OPINION ON STATE'S PETITION FOR DISCRETIONARY REVIEW

WHITE, Judge.

Appellant was convicted by a jury of the murder of Debra Sue Schatz a Houston postal carrier. The jury assessed his punishment at 75 years' imprisonment and a $10,000.00 fine. On direct appeal appellant argued that two oral statements admitted in his trial should have been excluded by the trial court.

The Court of Appeals agreed, holding that the statements were inadmissible because they "did not lead to the discovery of any evidence found to be true conducing to establish appellant's guilt." *Port v. State,* 736 S.W.2d 865, at 874 (Tex.App.—3rd Dist. 1987). This was the interpretation the Court of Appeals gave to Art. 38.22, Sec. 3(c), V.A.C.C.P. *Port,* 736 S.W.2d 865, *supra.*

The State filed a motion for rehearing, urging the Court of Appeals to reconsider its holding in light of this Court's interpretation of Art. 38.22, Sec. 3(c), V.A.C.C.P., as set down in *Briddle v. State,* 742 S.W.2d 379, 386–388 (Tex.Cr.App.1987), cert. denied, 488 U.S. 986, 109 S.Ct. 543, 102 L.Ed.2d 573 (1988). The Court of Appeals granted the State's motion, gave brief mention of our holding in *Briddle,* and clung to its original interpretation of Art. 38.22, Sec. 3(c). *Port v. State,* 738 S.W.2d 787 (Tex. App.—3rd Dist.1987) (Justice Gammage dissenting, at 791–792.)

This Court granted the State's petition for discretionary review on the ground that the Court of Appeals erred in holding that the oral statements of appellant were inadmissible under Art. 38.22, Sec. 3(c), V.A.C.C.P. We agree with the State, and reverse the decision of the majority of the panel of the Court of Appeals that appellant's oral statements were inadmissible under Art. 38.22, Sec. 3(c), *supra,* because the incriminating facts in those statements were either already known by the police or failed

to conduce to show the guilt of appellant. *Port*, 738 S.W.2d 787, *supra*, at 788–791.

A brief review of the facts is necessary before we begin our analysis. On June 8, 1984, Houston police officers and United States postal inspectors were investigating the disappearance of a female postal worker in a cul-de-sac on Lynbrook Hollow in Houston at about 9:30 a.m. Sergeant Collier arrived at the scene and was summoned to appellant's nearby home by his father, Bernard Port, who said that his son, a diabetic, was missing and that there were bullet holes in the house. Mr. Port showed Collier some bullet holes in the wall of the stairwell and handed over a pistol that smelled like it had been fired, which Mr. Port had recovered from appellant's room. Mr. Port was asked to give his written consent to search the house, which he did. During the search a bloody tennis shoe footprint was found on the garage floor and a tennis shoe, which Mrs. Port identified as belonging to appellant, matched the print. Bloodstains were also found in the hallway between the front door and the garage. A fingerprint taken from the doorjamb of appellant's upstairs bedroom was later identified as belonging to the deceased. At that point Mr. Port telephoned an attorney who advised Mr. Port to have the officers leave the house because it appeared that his son was a suspect. Collier took the pistol which Mr. Port had given him and gave it to Officer Sauceda. Collier then left to prepare a search warrant.

Sauceda locked the pistol in the trunk of her patrol car and a bulletin was issued seeking appellant as a possible homicide suspect. About 2:00 p.m. Sauceda was standing in front of the Port's home when she heard a postal worker yell "there he is." After a car chase appellant was apprehended in an apartment complex parking lot. Appellant was arrested and read his Miranda rights, which he said he understood. Appellant was asked whether he had killed the female postal carrier to which he replied, "Yeah, I shot her." He further stated that he did not know why he had shot her and that he would show them the place at the bayou where the had

dumped the body and the mail pouch. On the way to the bayou, appellant, after questioning, stated that he killed the deceased by shooting her in the head with a .22 calibre pistol after she had tried to escape from his upstairs bedroom. After searching the bayou for about fifteen minutes without any success, appellant was taken downtown by Sauceda. All of the above statements by appellant were excluded from evidence by the trial court.

On the way to the police station, after about ten minutes of silence and in response to no questions by Sauceda, appellant volunteered the following information:

You know, I don't remember everything that happened, but I do remember walking her up the stairs with my gun. I know she was afraid. But when I got to the top, she fell. You see, she was trying to get away; so, I grabbed her by the blouse. She kept struggling; so I went back up the stairs and I looked down and I started shooting at her. I know I missed her many times, but I know I hit her at least two times, maybe on the head, I don't know. I just looked at her for a long time. Then I went downstairs and I knew she was dead.

The above statement was admitted into evidence at appellant's trial.

After the above statement was made, Sauceda asked appellant how he knew Schatz was dead. He responded that he had checked her pulse. He further explained:

I went to get some trash bags, and I put her in them and tied her up. I then started to clean up because I was afraid my parents would find out. I washed my tennis shoes. I cleaned up all the walls. I put her in the trunk of my car, and I just drove around. I got hungry. I ate. When it got dark, I went up there to where I showed you, and I threw her in.

Appellant then stated that he did not know why he had killed her. These statements were not offered into evidence at appellant's trial even though the trial court had ruled them admissible.

When Sauceda and Port arrived at the police station, Sauceda opened the trunk of the patrol car and placed the gun she had obtained from the Port house on top of her clipboard. As appellant was getting out of the car he asked, "Is that my gun?" Sauceda then asked appellant if he recognized it and he said, "Yes, that is the one I used to kill her." These statements were also admitted into evidence. Further questioning of appellant occurred at the police station; however, any statements made there were excluded from evidence.

The deceased's body was later found at midnight on January 8th after a wrecker driver led police to an area from which he had towed appellant's car earlier that day. The victim's body was found nearby in the field, along with bloody trash bags. An autopsy revealed that the deceased died from two gunshot wounds to the head. Ballistics tests later revealed that one of the shots was fired from the .22 calibre pistol recovered from appellant's residence and placed in Sauceda's car.

Article 38.22, Sec. 3(c), *supra*, provides that a properly warned oral statement resulting from custodial interrogation is admissible if it:

> ... contains assertions of facts or circumstances that are found to be true and which conduce to establish the guilt of the accused, *such as* the finding of secreted or stolen property or the instrument with which he states the offense was committed. (Emphasis added).

■ This Court stated in *Briddle v. State*, 742 S.W.2d 379, *supra*, that the examples given in the above statute are for illustrative purposes only and do not act as a limitation on oral statements which conduce to establish an appellant's guilt and are shown to be true. *See also, Valtiero v. State*, 153 Tex.Crim. 260, 219 S.W.2d 73 (Tex.Cr.App.1949). While some case law indicates that the oral confession or statement must lead to the recovery of items or information before the oral confession or statement is admissible, the statute plainly requires only that the statement assert "facts or circumstances that are found to be true and which conduce to establish the

guilt of the accused." The statute places *no limitation* upon the manner in which the facts asserted are found to be true *Briddle*, 742 S.W.2d at 388. After *Briddle*, it is well established that oral statements made by an accused need not lead to or result in the discovery of incriminating evidence as long as the requirements of the statutes are met.

In *Briddle*, the defendant made an oral confession to a police officer in which he described the events of a murder. In the course of the confession the defendant related how a co-defendant had obtained a machete which had been used to cut the rope that was used to tie up the two victims. He then stated that the machete and a shotgun were taken with them when they fled to Dallas and that both could be found in the car that they subsequently abandoned in Dallas. Earlier that day the car had been found, through statements made by the co-defendant as to where the car was, and after an inventory search a shotgun was recovered. The officer who inventoried the car denied looking under the seats of the car.

Twenty-five days later, the victim's mother, when she went to claim her son's car, found the machete under the front seat between the springs and the seat. Unaware of the defendant's oral confession and having no idea as to whom the machete belonged, she called the assistant district attorney in Houston and told him of her discovery.

On appeal the defendant complained that his oral confession was inadmissible because it did not lead to the discovery of the stolen machete because the machete was found independently of his oral confession. He argued that if the items or information are known to the police before an oral confession or statement is given the statement is not admissible. *Briddle*, 742 S.W.2d at 387; *McBride v. State*, 506 S.W.2d 887 (Tex.Cr.App.1975). He further argued that if the machete had been discovered after an oral statement but not as a result of the oral statement it was not admissible either.

This Court rejected both of appellant's contentions saying that the finding of the machete by the victim's mother, 25 days after the defendant's statement, supported the facts asserted by the defendant and conduced to establish his guilt. Thus, it was the subsequent corroboration, and not the incriminating nature, of the machete being found in the car which led to the defendant's statements being admissible.

Former Presiding Judge Onion, writing for this Court, explained Art. 38.22, Sec. 3(c) in clear terms:

The statute placed no limitation upon the manner in which the facts asserted are found to be true. If a defendant orally confesses to the police to a murder and states he had thrown the murder weapon, a pistol, in a certain well, and the police search the well and find the pistol, whose location was previously unknown to them, there is no problem with the admissibility of the oral confession. Suppose, however, the police search the well and do not find the pistol, but on the next day a passing neighbor, who knows nothing of the oral confession, dips the bucket in the well and it comes up with the pistol, which he turns over to the police. The pistol is identified as the murder weapon. Can it be said the oral confession is not admissible because it did not lead to the recovery of the pistol by the police or its agents? The finding of the pistol by the passing neighbor supports the truth of the facts asserted by the defendant and conduces to establish his guilt, and establishes the reliability of the confession which is the concern of the statute involved.

*Briddle, supra,* at 388.

As Judge Gammage pointed out in his dissent to the "Order Modifying Opinion Upon Petition for Discretionary Review," at the time appellant made the statements that were eventually admitted into evidence at appellant's trial the whereabouts of the victim was unknown to the police and the facts and circumstances surrounding the victim's disappearance were only suspected. However, the majority opinion of the Court of Appeals erred by relying on the fact that by the time appellant made the statements that were admitted at his trial, appellant had already told the police about shooting the victim with a .22 calibre pistol and thus the statements concerning the murder, since already known by the police, could not be "found to be true." The majority opinion went on to say that in his oral statements to the police, appellant asserted many facts, some of which were true and some of which were false. Most notably, appellant made false assertions as to where the body was and directed officers to a place where he described in detail the disposition of the body and his actions in connection therewith, all of which were determined to be untrue. Therefore, the majority erred in its analysis that the police already knew the truth regarding the victim's death. It was only when the body of Debra Schatz was later found and an autopsy revealed that she had died from two gunshot wounds to the head, and a ballistics test established that the gun identified by appellant as the murder weapon was indeed used to kill her, that the statements, through this corroboration, were found to contain true assertions of facts or circumstances conducing to establish appellant's guilt. Moreover, if but one of the assertions within a confession is found to be true and conduces to show the guilt of the accused, then the confession is admissible in its entirety. *Marini v. State,* 593 S.W.2d 709 (Tex.Cr.App.1980).

In *Santana v. State,* 714 S.W.2d 1 (Tex. Cr.App.1986), a codefendant told police where the weapon, that had been used during the commission of the crime, was located. The defendant was then questioned and he also revealed the location of the weapon. The defendant, on appeal, then complained that his statement was inadmissible because the police already knew where the weapon was located as a result of the information that they had obtained from the co-defendant. This Court stated that:

The fallacy with appellant's argument is that at the time appellant gave his oral statement, the police had not ascertained that Meanes' (the co-defendant's) statement as to the location of the weapon

was true ... The information contained within the (defendant's and co-defendant's) statements was new to the police and led directly to the recovery of the weapons used during the commission of the offense.[1]

In the instant case, the police had not ascertained that any part of appellant's statements were true.

This Court agrees with Judge Gammage's conclusion which states:

Only when the fact or circumstance corroborated the accused's disclosure of guilty knowledge did the fact or circumstance conduce to establish the accused's guilt. David Port made assertions of facts and circumstances which were not within the knowledge of the police and which only the killer of Debra Schatz could have known at the time. When these facts and circumstances were found to be true they conduced to establish Port's guilt and his assertions became admissible under Sec. 3(c).

*Port*, 738 S.W.2d 787, *supra*, at 792.

■ Because the oral statement (that appellant had shot the victim twice in the head was later corroborated by an autopsy that was performed on the victim) was found to contain true assertions of facts or circumstances which conduced to establish appellant's guilt, this Court holds this statement was admissible under Art. 38.22, Sec. 3(c), V.A.C.C.P.

■ The admissibility of appellant's statements, "Is that my gun" and "Yes, that is the one I used to kill her," is a different question. Although the pistol was already in the officer's control when appellant made the statements, appellant's statements were not found to be true until the ballistics test was run on the gun. Therefore, the question is whether *Briddle* completely eliminates a connection between the statement made and the manner in which it was found to be true. If so, then subsequent proof through the testing of the gun which confirmed the gun was the murder weapon would make the statement

admissible. We hold that under *Briddle*, which places *"no limitation"* upon the manner in which the facts asserted are found to be true, these statements were also admissible.

Lastly, we find the Court of Appeals erred in concluding that the verified facts and circumstances in appellant's oral confessions did not conduce to establish appellant's guilt. *Port*, 738 S.W.2d 787, *supra*, at 790. In its holding, the Court of Appeals erroneously distinguished appellant's assertions of guilt from appellant's assertions which were conducive to showing his guilt:

Whether the defendant claims to have shot the victim once or several times is no more conducive to establish his guilt. The statement does not conduce to establish guilt but is merely an oral assertion of guilt.

*Port, supra.* The Court of Appeals erred when they held that in the instant case the verified elements within appellant's confession of guilt were not conducive to establishing his guilt.

■ The second prong of Art. 38.22, Sec. 3(c) V.A.C.C.P., "which conduce to establish the guilt of the accused," establishes a relevancy requirement for the facts and assertions in the oral statements of an accused. This relevancy requirement was met in the instant case where appellant's oral statements that he shot the victim twice in the head and that he used his .22 calibre pistol to shoot the victim were verified by the later discoveries, respectively, that the victim's cause of death was two gunshot wounds to her head and that his .22 calibre pistol was ballistically proven to be the murder weapon. These facts and assertions within appellant's statements were found to be true and were directly conducive to establishing appellant's guilt by verification of the manner and means by which appellant caused the death of the victim.

1. The underlined portion of the above is no longer required under *Briddle,* 742 S.W.2d at

388.

We reverse the judgments of the Court of Appeals both on direct appeal and on rehearing, and remand to the Court of Appeals to resolve the points of error unanswered on original submission.

CLINTON, J., dissents to substituting mere "corroboration" for settled construction of statutory requirements serving to establish reliability of assertions made by an accused in these circumstances.

TEAGUE, Judge, dissenting.

Ordinarily, an oral statement by one in custody about the crime for which he is being held is not admissible evidence against him at his trial. *Smith v. State,* 514 S.W.2d 749 (Tex.Cr.App.1974); *Mc Gilvery v. State,* 533 S.W.2d 24 (Tex.Cr. App.1976).

An oral statement by the accused is admissible evidence at his trial, provided, inter alia, it "contains assertions of facts or circumstances that are found to be true *and* which conduce to establish the guilt of the accused, such as the finding of secreted or stolen property or the instrument with which he states the offense was committed." Art. 38.22, § 3(c), V.A.C.C.P. (My emphasis.)

An oral statement of the accused is not admissible evidence unless in connection with such statement the accused makes statements of facts that are found to be true, which conduce to establish his guilt. *Pierson v. State* [145 Tex.Crim. 388], 168 S.W.2nd 256 (Tex.Cr.App.1943).

Items of evidence not found as a result of the in-custody statements or admissions of the accused are not admissible as oral confessions of the accused, notwithstanding that the accused made in his oral statement damaging and incriminating statements of guilt about the crime for which he is being held in custody. *Garner v. State,* 464 S.W.2d 111 (Tex.Cr.App.1971).

Unless the accused's oral statement to the police embodies a fact or circumstance that is found to be true which incriminates the accused in the commission of the crime, i.e., conduces to establish his guilt of the crime he is suspected of committing, the oral statement is not admissible evidence at his trial. *Shelton v. State* [168 Tex.Crim. 432], 328 S.W.2d 445 (Tex.Cr.App.1959).

For almost one hundred years the above has been the law of this State, in deciding whether an oral statement of the accused person was admissible evidence. Today, for reasons not explained by Judge White, the author of the majority opinion, the above statutory provision, which comes to us from the Legislature, and the above case-law interpreting the statute, are no longer the law of this State. Both the statutory provision and the case law on point have been implicitly repealed or overruled by the majority opinion in this cause. I predict that after today in Texas we should soon see a return to those "good old days" of this century when the norm was taking involuntary confessions from accused persons by law enforcement personnel, except now it will just depend upon how badly a particular member of the law enforcement sector believes that the end justifies the means. If he so believes that the end justifies the means, then any oral statement he obtains from the accused will become admissible evidence against the accused at the accused's trial.

By the majority opinion, and notwithstanding what the Legislature of this State has enacted, it now appears that virtually any oral statement of the accused will become admissible evidence, even when the police already know of the fact or circumstance contained within the statement and the statement thus does not cause them to find, for example, the murder weapon or fruits of the crime, because they already know where either is located, or they then have same in their possession. Therefore, unless the police or the prosecuting attorney are both guilty of ignorance, negligence, incompetence, downright laziness, failure to either woodshed or be woodsheded, etc., the accused's oral statement should, after today, always be admissible evidence. Of course, just like an attorney can lose an uncontested divorce suit, this might happen to a prosecuting attorney in failing to get an oral statement of the accused admitted into evidence. However,

I find that before that happens he will really have had to work hard to accomplish that feat.

In the article that I wrote for the *Voice for the Defense*, March, 1987 edition, "Sometimes There Must Be a Dissenting Opinion to a Majority Opinion of the Court of Criminal Appeals of Texas," I pointed out what I thought was the obvious: "There are usually two appealing sides to every issue in almost every case that reaches the Court [of Criminal Appeals], and a group of judges who presently make up the Court of Criminal Appeals, with different educational backgrounds, professional experiences, heredity, different political and religious beliefs, with different social, economic and political backgrounds and philosphies, cannot ever be expected to think alike. Nor would any right thinking person want that to occur...." I believe that this is just as true today as it was in 1987. Therefore, as easily seen by this Court's published and unpublished opinions in recent years, it is the rare occasion when this Court will hand down a unanimous opinion in which all nine judges voted for that opinion. If there is the slightest chance that that opinion, either in part or whole, might be erroneously interpreted or misinterpreted either by the bench or bar of this State, usually at least one dissenting or concurring opinion will be filed, or at least one dissenting or concurring only in the result vote will be cast.

It is also a given that when this Court overrules case law that is almost 100 years of age it will usually expressly state this in the opinion, and not leave the reader to guess that that is what is happening. When that does not happen, then it is safe to. assume that the opinion has not over-ruled almost 100 years of case law on the particular subject, which is what does not happen in this cause.

This Court's opinion of *Briddle v. State*, 742 S.W.2d 379 (Tex.Cr.App.1987), is a good example of the above. In *Briddle*, there was not one single dissenting vote cast, nor was there a single dissenting opinion filed to the majority opinion, nor was there a single concurring vote cast or a concurring opinion filed, regarding the admissibility of the defendant's oral statement. At no place in the opinion is there the slightest hint that almost 100 years of this State's statutory law on the subject or this Court's case law regarding one kind of oral statement by a defendant was going to be overruled. Not one single case of this Court was either expressly or implicitly overruled. I concurred in the result reached, but did not file a written opinion. Judge Clinton filed a concurring opinion, in which he discussed an issue that is not implicated in this cause. What does a seven judge majority opinion, with two judges concurring in the result, and with no dissents, mean? Especially when there is not anything in the opinion that significantly changes the then existing case law of this Court (which is almost 100 years of age)? At the maximum, it seems to me that this means that the opinion was non-controversial, and did not pretend to make any earth-shaking changes in our criminal jurisprudence. If it had, given this Court's past history, doesn't it stand to reason that there would have been at least one or more dissenting opinions filed, or at least one or more dissenting votes cast to the majority opinion? I believe so, but that did not occur in *Briddle*. So, what's the big deal about *Briddle*, and what causes a present day majority of this Court want to misinterpret it so egregiously, and to at least implicitly overrule almost 100 years of this Court's case law on the subject, as well as to act legislatively and repeal almost 100 years of legislation on this subject?

I point out that even though at least one very controversial opinion of this Court was mentioned in the most recent edition of *The Texas Lawyer* after *Briddle* was handed down, which opinion was handed down the same week as *Briddle*, *Briddle* did not even get honorable mention in that edition of the paper. Also, no motion for rehearing was filed in *Briddle*, even though the defendant Briddle was, from my perspective, represented by one of the outstanding criminal appellate attorneys of this State, who I believe would have most certainly filed a motion for rehearing had he concluded or inferred from the opinion that

that case was about to lay the predicate for perhaps some of the worst law ever to emanate from this Court's mouth.

Given what the State argued in the court of appeals in this cause, and now before this Court in this cause, one would think that *Briddle* was one of the most divided and controversial opinions ever handed down in the history of this Court. And yet it did not get a single dissenting opinion or vote. I believe that Presiding Judge Onion, the author of *Briddle*, if asked back then as to whether he believed that *Briddle* was going to become one of this Court's most controversial opinions ever handed down, or at least one of the most misinterpreted or misunderstood opinions that this Court has ever handed down, and that it implicitly overruled almost 100 years of this Court's case law on the subject, as well as implicitly repealing almost 100 years of statutory law of this State, would have uttered that famous comment of his: "If that occurs, color me amazed, one more time." Had Presiding Judge Onion foreseen how today's majority opinion so misunderstands *Briddle*, I believe that he would have written further on the subject of the admissibility of an oral confession of the accused that led to the fruits of the crime or the weapon which the accused used to commit the crime, explaining in detail fashion what he really meant when he wrote *Briddle* for the Court. Perhaps at this later date it would be proper for this Court to invite Presiding Judge Onion to file an amicus curiae brief in this cause so that he can give us his own personal interpretation of what he stated and held in *Briddle?* That would certainly beat the heck out of what we now get from the majority opinion in this cause.

Therefore, let us first take a look at this Court's opinion of *Briddle* to see just what causes it to be so misinterpreted, or at least misunderstood, and what causes a majority of this Court to act legislatively when it effectively reinterprets Art. 38.23, § 3(c), V.A.C.C.P., and overrules, at least implicitly, not only the statute, but almost 100 years of this Court's case law on the subject, as though *Briddle* had been the first

opportunity by this Court to write on the subject of oral statements of the accused.

In rejecting the defendant Briddle's contention that an oral statement that he had made to the police should not have been admitted into evidence at his trial, Presiding Judge Onion stressed in his opinion for the Court the facts of the case pertaining to the issue.

It appears that the deceased's motor vehicle was found abandoned in Dallas (the murder occurred in Houston). Although an inventory search of the vehicle was conducted by a 17 year veteran of the Dallas Police Department, and a shotgun was found in the motor vehicle where the defendant said he put it, the veteran officer nevertheless failed to look under the front seat of the vehicle. Had he done so, he would have also found a machete. The vehicle was later turned over to the deceased's mother, after which she found the machete under the front seat. She turned the machete over to the police. In his oral statement, the defendant told the police that the machete was used to cut rope in order to tie up the deceased and another individual was left in the vehicle. By the opinion, no evidence was presented that might have indicated that from the time the machete was placed under the front seat of the vehicle, presumably by the defendant, until the deceased's mother found it, the machete had been removed from the vehicle, i.e., once the machete was placed under the front seat, it always remained under the front seat of the vehicle until the deceased's mother found it. Presiding Judge Onion, for the Court, in upholding the admissibility of appellant's oral statement as to where the machete was located, gave two hypothetical scenarios of how such an oral statement might be admissible evidence. The first scenario involved the accused orally confessing to the police that he murdered the deceased and thereafter threw the murder weapon, a pistol, in a certain well. Acting upon this information, the police searched the well and found the pistol, whose location was previously unknown to the police. "[T]here is no problem with the admissibility of the oral confession [pursuant to Art. 38.23, § 3(c), V.A.

C.C.P. under those circumstances.]" (390). Agreed! The second scenario involved a factual situation which was extremely similar to that found in *Briddle*. Everything is the same as in the first scenario except the police go and search the well, but do not find the pistol. This failure by the police to find the murder weapon was due to either incompetence, negligence, stupidity, just downright laziness, etc. With nothing shown to have changed from the time the accused put the pistol in the well, the next day a passing neighbor, obviously thirsty for a drink of water, dips a bucket in the well, after which the pistol is found in the bucket. The neighbor knew nothing about the defendant's oral statement, or the pistol in the well, before he saw it.

Presiding Judge Onion asked in *Briddle:* "Can it be said the oral confession [in the second scenario] is not admissible because it did not [directly] lead to the recovery of the pistol by the police or its agents? The finding of the pistol by the passing neighbor supports the truth of the fact asserted by the defendant and conduces to establish his guilt, and establishes the reliability of the confession which is the concern of the statute involved. We conclude that the finding of the machete [by the deceased's mother] under the circumstances described supported the facts asserted by the appellant and conduced to establish his guilt. The requirements of the statute were met. The court did not err in admitting the oral confession...." (388).

I do not believe that, given the facts and circumstances that related to the finding of the machete in *Briddle*, anyone can seriously argue with the holding in *Briddle*, that finding of the machete by a third party, the deceased's mother, and not by the police to whom the defendant gave his oral statement, where there was no showing of any change in the location where the property was found, need not directly result from the defendant's oral confession, but may be accidentally discovered and recovered by a third party, who is not shown to have had any knowledge of either the defendant's oral statement, the instrumentality, or its location. The key to whether the accused's oral statement is admissible still lies in the fact that before the accused gives the police his oral statement, gives them information in the statement that leads to new information that connects the accused to the crime he is suspected of committing, tells them in the oral statement where the murder weapon or property belonging to the deceased might be located, that connects him to the murdered victim, the police did not then know any of the above. Again, the only reason the police did not find the pistol in the second hypothetical well scenario, see supra, lies in the fact that they did not do so simply because of either incompetence, negligence, stupidity, downright laziness, etc., and not because it was not always in the well. Thus, all that *Briddle* held was that an accused's oral statement need not directly lead the police to whom the statement was made to the recovery of, for example, the murder weapon, and that such might be found indirectly, rather than directly, by the police.

*Briddle*, however, did not otherwise change the rule as to when an accused's oral statement leading to the fruits of the crime or the instrumentality with which the crime was committed became admissible. In *Briddle*, the defendant's oral statement as to the whereabouts of the machete was always truthful and reliable; it was only because of police incompetence, negligence, stupidity, downright laziness, etc., that the machete was not found by the police at the location where the defendant told them that he had put it. It was always at the location where the defendant told the police that he had put it. In *Briddle*, if any competent police officer had gone back to the location five minutes, five hours, five weeks, five months, etc., after the 17 year veteran police officer, who should have thoroughly searched the interior of the vehicle, but didn't, left the scene, assuming that no intervening circumstances were shown to exist, the machete would have still been where the defendant stated he had originally put it. This holding was actually made in *Richardson v. State*, Tex. Crim. 299, 356 S.W.2d 676 (1962). "We are unable to agree that because the rifle was

not found until the day following appellant's statement to the witness as to where it was located and after appellant had accompanied the officers to the scene that it was not shown to have been found as the result of such oral statement."

Contrary to the majority opinion by Judge White in this cause, the court of appeals in *Port v. State*, 738 S.W.2d 787 (Tex.App.–3rd Dist.1987), did not on rehearing "cl[i]ng to its original interpretation of Art. 38.22, Sec. 3(c)", V.A.C.C.P., as set out in *Briddle v. State*, 742 S.W.2d 379, 386–388 (Tex.Cr.App.1987).

On original submission, Justice Aboussie of the court of appeals, in her well reasoned opinion for that court, correctly stated the following, see 736 S.W.2d at 874: "There was no evidence found *as a result* of appellant's oral statements which confirmed the reliability of the facts and circumstances in his statement such to permit the oral statement to be admissible. At the time [appellant] was arrested, the police suspected that he had shot Schatz [the murder victim] in his home with the .22 pistol in their possession. [Appellant's] confession only confirmed their belief and led to no new evidence or information found to be true which tended to establish [appellant's] guilt. The State does not claim [appellant's] statements were *res gestae* of the offense and we do not address that matter. Since [appellant's] statements stemmed from custodial interrogation and did not lead to the discovery of any evidence found to be true conducing to establish appellant's guilt as required, the statements were inadmissible." Justice Aboussie of the court of appeals in the opinion modifying its original opinion, see 738 S.W.2d 787, 788–789, also stated the following: "In order to avoid misunderstanding, we hereby modify our opinion to eliminate the language disapproved in *Briddle* [namely, that an oral statement, in order to be admissible under § 3(c), must directly lead to or result in the discovery of incriminating evidence]. However, because *Briddle* does not alter the basic principles relied on by this Court, the [court's original judgment] remains unchanged."

I do not find anywhere in *Briddle* where this Court ever held or intended to hold that an oral statement of the defendant was admissible evidence when the police knew before the oral statement was made where the murder weapon was located, then had the murder weapon in their possession, knew where an item or items of property that had belonged to the deceased was located, or already had in their possession information contained within the accused's oral statement.

Justice Aboussie pointed out the following in her second *Port* opinion: "It is [still] not sufficient that the accused merely confess guilt or even identify and claim property which would establish his guilt, if true.... Two requirements must [still] be satisfied before an otherwise inadmissible oral statement may be admitted in evidence pursuant to art. 38.22 § 3(c): *First*, the oral statement must contain a fact or circumstance not then known to the police that is later found to be true. *Second*, the fact or circumstance contained in the statement must conduce to establish the guilt of accused. Under the facts established here, [appellant's] oral statements [that were admitted over objection] did not meet the test of reliability and neither of his oral statements admitted in this cause satisfied both of these prerequisites for admission." (789). [My emphasis.]

Thereafter in the opinion, Justice Aboussie set out in detail what the police knew and did not know prior to when appellant made his oral statements to the police; why many of the statements were unreliable because they were false; why some of the statements were not incriminating, etc. Justice Aboussie correctly concluded from the record facts that under the statute, and this Court's prior decisions, merely because the police recover the victim's body and the defendant previously orally stated that he shot the victim does not make the oral statement admissible, even if it is established that the victim died from a gunshot wound, because "The statement does not conduce to establish guilt *but is merely an oral assertion of guilt.* Otherwise, virtu-

ally all oral confessions would be admissible, because some stated detail may be capable of confirmation...." (790). (My emphasis.) Throughout, Justice Aboussie stressed in her well reasoned opinions that in order for the defendant's oral statement to be admissible, it is necessary for the prosecution to show that the statement contained, unknown to the police, incriminatory facts, which, if found to be true by the police, would conduce to establish the defendant's guilt of the crime he is suspected of committing. "The statute and the cases decided thereunder clearly require that the facts asserted be *unknown to the police* and that the facts be incriminating ... We have no quarrel with the premise set forth in *Briddle,* but we perceive a distinction with respect to the oral confessions in this cause, however subtle and difficult to articulate." (791). [Emphasis in the original.]

Justice Aboussie made it clear in her opinions for the court of appeals that to hold other than what she had held for the court of appeals would effectively repeal the statute, if all it takes is to show that the accused made an oral assertion of guilt to the police, such as "I murdered X by shooting X with a pistol," and this is somehow later corroborated either in whole or part by the police. Obviously, corroboration under that circumstance will always be easy to establish, i.e., just find the body with at least one bullet wound in it, and show that the bullet was fired from the pistol. The statement need not lead to the finding of anything new by the police.

Today, unfortunately, a majority of this Court votes to act legislatively and by doing so effectively repeals § 3(c) of Art. 38.22, V.A.C.C.P. It will now no longer be necessary for the prosecution to establish that the defendant's oral statement contains incriminating information, which was then unknown to the police, which, if found to be true, would conduce to establish his guilt of the crime he is suspected of committing. All that is now necessary under today's majority opinion, however, is that the defendant make an incriminating oral statement, such as "I murdered X by shooting X with a gun," and that through independent means the police establish that the defendant murdered X by shooting X with the gun that they had in their possession prior to when the defendant made his oral statement.

The holding by the majority opinion in this cause is at odds with virtually everything that this Court has written in almost 100 years on the admissibility of a defendant's oral statement, where same concerns the subject of a defendant making assertions of fact that are found to be true, and which conduce to establish his guilt, such as finding secreted or stolen property, the instrument with which he states the offense was committed, or using information in the statement that leads to new, but then unknown information.

I will not elongate this opinion by tracing the history of Art. 38.22, § 3(c), V.A.C.C.P., because Presiding Judge Onion, who authored *Briddle* for the Court, has, up to 1973, already done that in *Butler v. State,* 493 S.W.2d 190 (Tex.Cr.App.1973). Also see "Appendix A" and "Appendix "B", which are attached to this opinion, and which are borrowed from appellant's counsel's brief in this cause.

Thus, it is only necessary to stress the following: (1) The admission in evidence of an oral statement of one accused or suspected of committing a criminal wrong is controlled by statute in this State, and the wisdom of this legislative policy is, of course, not a matter for this Court; (2) the general rule is that oral confessions are inadmissible evidence because they are inherently unreliable, so liable to be misunderstood, so easily fabricated, so hard to be contradicted, and are admissible only as an exception to the general rule of exclusion. However, by today's majority opinion, oral statements of the accused are now admissible for the opposite reasons, namely: they are inherently reliable, not easily misunderstood, not easily fabricated, not difficult to contradict, and are generally admissible evidence unless the defendant can establish, at least by a preponderance of the evidence, why the oral statement should not be admissible evidence.

My independent research of this Court's interpretation of the § 3(c) exception, however, leads me to conclude that for almost 100 years this Court has consistently interpreted the statutory exception in the same manner, i.e., that in-custody oral statements of guilt by the accused are admissible evidence conditioned on the statement leading to the finding of the fruit or fruits of the crime, the weapon or instrumentality that was used to commit the crime, which was previously unknown to the police, or leading the police to new, but then unknown, information that connects the defendant to the crime of which he is suspected of committing.

What probably causes this Court's majority opinion in this cause not to have any real roots lies in the fact that it reads as though *Briddle* was the first opportunity for this Court to interpret § 3(c) since that section's original precursor was enacted. If one can ignore almost 100 years of case law of this Court, and the legislative history of our oral confession law, I suppose that is one way that one can write such an opinion.

*Briddle*, however, did not overrule this Court's strict viewing of the statute, nor did it either expressly or implicitly overrule almost 100 years of this Court's case law on the subject. All that *Briddle* held was that the statutory exception did not require that the fruits of the crime, the weapon or instrumentality that was used to commit the crime, or that the new information must be *directly* discovered or found by the police to whom the defendant made his oral confession, but that same may be indirectly found by a third party, who was unaware of the oral statement or perhaps even the significance of what he had found.

Judge Roberts, in the dissenting opinion that he filed in *Butler*, pointed out that the Legislature of this State had notice that for some period of time, at that time at least 70 or 80 years, this Court had always strictly interpreted the statute, but had declined to make any significant changes in the way that it had interpreted the statute. Notwithstanding this, Judge Roberts made an unsuccessful plea that this Court's past interpretation of the statute, as related to impeaching a defendant with his oral statement, should be overruled. Those voting to reject his plea were Presiding Judge Onion, and Judges Morrison and Douglas. I emphasize that the issue of using a defendant's oral statement for impeachment purposes is not before this Court in this cause, as it was in *Butler*.

I pause to point out that historically this Court has never held that a § 3(c) oral statement of the accused was admissible merely because it fit the statutory definition. This Court has always held that the incriminatory assertions of facts or circumstances contained within the oral statement must (1) be unknown to the police, (2) be found to be true, *and* (3) conduce to establish the guilt of the accused. Also see *Self v. State*, 513 S.W.2d 832, 834 (Tex.Cr.App. 1974). In this regard, it is not necessary before the defendant's oral confession is admissible in its entirety that the police corroborate each individual assertion of fact contained within the oral confession. If any one of the assertions of fact is found to be true, such as finding the fruit of the crime or the weapon used, pursuant to the oral statement, provided that such conduces to establish the defendant's guilt, then same is admissible evidence. See *Marini v. State*, 593 S.W.2d 709 (Tex.Cr.App.1980). Also see *Hayes v. State*, 502 S.W.2d 158 (Tex.Cr.App.1973); *Baldree v. State*, 784 S.W.2d 676 (Tex.Cr.App.1989). It is the character of the fact or circumstance (new and unknown information to the police) asserted in the oral statement, and not just the defendant's knowledge, that must be incriminating. Under the statute, there is no limitation on the types of oral statements that may conduce to establish the accused's guilt or the manner in which they may be found to be true that would conduce to establish the accused's guilt. In that regard, the examples in the statute can be considered for illustrative purposes, and not as a limitation on oral statements that conduce to establish guilt. However, I have yet to find a single case in which this Court was confronted with the oral statement leading the police to find other than the weapon used in the crime or items of

property belonging to the deceased or the victim, or items of property that constituted the reason for the filing of the charges. Furthermore, under *Briddle*, the incriminating nature of the oral statement need not be direct. It will be sufficient if it constitutes an incriminating part of the State's theory concerning the defendant's guilt.

Thus, if appellant's oral statement did not lead to the discovery of new evidence—that is, for example, finding physical items of evidence, such as the weapon he used to commit the murder with or fruit or fruits of the crime, or new information derived from the statement, the statement is not admissible evidence. At least that was the law before today's majority opinion was handed down.

I find that appellant's counsel correctly argues that "The clear import of the cases is summed up in one word: corroboration." I add: The clear import of § 3(c) is that an oral confession is not admissible unless it is shown that the police found it to be true, *through corroboration,* and an incriminatory statement, standing alone, is insufficient to cause the oral statement to become admissible evidence. Thus, before an oral statement of guilt is admissible, the incriminating statement must be corroborated by, for example: 1) the finding of the fruits of the crime, 2) finding of the murder weapon, or 3) obtaining new information from what is contained in the statement. In each instance, what causes the oral statement to become admissible lies in the fact that only the perpetrator of the crime would know of these facts, and corroborating these facts simply causes the statement to become reliable and trustworthy. As appellant's counsel puts it: "Thus, the law is crystal clear that, when dealing with corroborative physical evidence under this Section, the items must relate to the crime in question, and must be unknown or undiscovered by the police prior to the defendant making the oral statement." The same is true of unknown information within the statement that causes the police to find new and incriminating information that connects the *accused to the offense* with which he is suspected of committing.

It should be obvious to almost anyone that if this Court "swallows" the contaminated merchandise that the State is attempting to sell in this cause, it will cause this Court to vomit almost 100 years of case law from the stomach of this Court. However, such will enable this Court to affirm appellant's conviction rather than reverse it as should occur in light of this Court's past case law.

It should also be obvious to almost anyone that the reason for this Court's rule regarding corroboration lies in the fact that we do not want an innocent person, for whatever reason, to falsely confess to the commission of a crime. See O. Rogge, *Why Men Confess* (1959). It is now common knowledge that since the Korean War, which the United States lost in 1953, which as far as I can tell is the first war that the United States ever lost, not because of the lack of desire on the part of those who sacrificed their bodies to win that war, but because of the lack of leadership that then existed in these United States, we have been made more aware of the fact that through psychological, as well as physical pressures, individuals will easily falsely confess to crimes when in fact they are innocent of those crimes. This occurs notwithstanding the fact that they had been continuously brainwashed that if they did confess, and, at that time, gave the enemy more than their name, rank, and serial number, upon their release as a prisoner of war they would be court martialed and executed by a firing squad no matter the reason why they had falsely confessed.

I stress that the facts of this cause reflect that before appellant, who was then missing, was arrested, the police had issued an all points bulletin to arrest him as a suspect in the murder of one Debra Schatz, whose body was also then missing. At that time, a .22 calibre pistol, which smelled as if it had recently been fired, had been seized by the police from appellant's parents' residence, where appellant lived. Bullet holes, blood stains, a bloody tennis shoe print, and a tennis shoe which matched the print and which belonged to appellant were also found and seized from the residence. After appellant was arrested by the police,

he was asked by the police whether he had killed Debra, and he said, "Yeah, I shot her," and also stated that he had thrown the body into a nearby bayou. The latter statement was shown to be a lie. *APPELLANT'S VERBAL RESPONSES TO POLICE QUESTIONING AT THE TIME OF HIS ARREST WERE EXCLUDED FROM EVIDENCE.* Thereafter, while being driven to the bayou by the police, where appellant falsely said Debra's body was located, appellant was asked how he had killed Debra and he replied that he had shot her with a .22 calibre pistol when she was inside of his parent's residence. The pistol was later established to be the same pistol that the police had earlier seized from appellant's parents' residence. *APPELLANT'S ORAL STATEMENTS WERE EXCLUDED FROM EVIDENCE.* Enroute to the stationhouse from the bayou, appellant repeated the statements that he had made enroute to and after he arrived at the bayou. In this regard, appellant went into detail how he had struggled with and then shot the deceased, and later cleaned up "the mess." Except for the details going to "cleaning up the mess," *THESE STATEMENTS WERE ADMITTED INTO EVIDENCE.* After the police vehicle in which appellant was riding stopped at the stationhouse parking lot, after seeing the pistol its police officer custodian then had, appellant asked: "Is that my gun?" The custodian asked: "Do you recognize it?, with appellant responding: "Yes, that is the one that I used to kill her [with]." *THESE STATEMENTS WERE ADMITTED INTO EVIDENCE.*

Through no assistance or new information from appellant, Debra's body was later recovered by the police. An autopsy revealed that she had died from two gunshots to the head.

The court of appeals correctly ruled that the above oral statements that were admitted into evidence should not have been admitted into evidence because "There was no evidence found *as a result* of appellant's oral statements which confirmed the reliability of the facts and circumstances in his statement such to permit the oral statements to be admissible ... [Appellant's]

confession only confirmed their [the police] belief and led to no new evidence or information found to be true which tended to establish [appellant's guilt." (Court of Appeals' emphasis.) In summary, the oral statements that were admitted into evidence [over objection] should have been excluded because (1) they did not contain a fact or circumstance not then known to the police that was later found to be true, and the fact or circumstance, that was then unknown to the police, that was contained in the oral statements, did not conduce to establish the appellant's guilt of the murder of the deceased.

What did the police know or reasonably suspect before appellant made his oral statements to the police? When the police left appellant's residence, the police were convinced, understandably by what they had seen and seized, that appellant was a prime suspect in the murder of the deceased, even though at that time they had not found the deceased's body, which is no longer necessary to sustain a murder conviction. When appellant told the police that he had killed the deceased, all that this statement did was to confirm what the police already reasonably suspicioned. From appellant's oral statements, the police most assuredly did not learn anything that they did not already know or reasonably suspect. Thus, the above first prong of the test was not satisfied. As to how and where appellant had hidden the deceased's body, appellant lied to the police when he told them that he had put the body in a bayou. Such obviously does not satisfy the above first prong of the test (reliability) governing admissibility of a defendant's oral confession. As to appellant's statement identifying the pistol as the weapon that he had used to shoot the deceased with, Justice Aboussie correctly pointed out that notwithstanding the fact that the police did not have the deceased's body at that time, this statement by appellant did not satisfy the second prong of the test because it did not conduce to establish appellant's guilt of the murder of the deceased; it was merely an oral assertion of guilt. Furthermore, the police already be-

lieved that the pistol that they then had in their possession was the murder weapon, which occurred before appellant made the oral statement to them. Ballistics tests later confirmed the police' good faith suspicions that the pistol was the murder weapon.

It is obvious to me, if no one else, that the majority opinion of this Court, if nothing else, has simply tracked the dissenting opinion by Justice Gammage of the court of appeals, and the State's arguments in this cause. However, in approving such, the majority of this Court should realize, or at least recognize, that it is acting legislatively, and not judicially. The majority opinion actually flies in the face of Legislative intent on the subject, as well as implicitly overruling almost 100 years of this Court's case law on the subject. I believe that under Justice Gammage and the State's arguments, as long as the police somehow corroborate either part or all of a defendant's oral statement, no matter that the police already knew of the information that the defendant gave them through his statement, this will nevertheless render the entire statement admissible. I also believe that once trial prosecutors and the police have fully comprehended how far they can run with the majority opinion, when dealing with accused persons, it will only be a matter of time before a defendant's oral statement will always be admissible evidence, even though the police do not corroborate anything within the statement.

Finding that a careful reading of such cases as *Briddle, Valtiero v. State*, 153 Tex.Crim. 260, 219 S.W.2d 73 (1949); *Ashley v. State*, 362 S.W.2d 847 (Tex.Cr.App. 1962); *Mc Bride v. State*, 506 S.W.2d 887 (Tex.Cr.App.1975); *Chase v. State*, 508 S.W.2d 605 (Tex.Cr.App.1974); *Marini v. State*, 593 S.W.2d 709 (Tex.Cr.App.1980), and *Santana v. State*, 714 S.W.2d 1 (Tex. Cr.App.1986), upon which the State relies, and some of which the majority opinion relies upon for authority, are easily distinguishable from this cause, I will not elongate this opinion by distinguishing those cases, but will leave that up to the reader, if he or she feels same is necessary.

Appellant's counsel correctly points out that *Briddle* did not significantly change the well-settled law of this State regarding why the kinds of oral statements found in this cause, that were admitted into evidence over objection, were not admissible evidence. *Briddle* certainly did not hold, or even hint that it was holding that prior cases of this Court on this subject were wrongly decided, nor did *Briddle* even hint that any case in conflict with *Briddle* was expressly overruled. The majority opinion in this cause, however, reads like *Briddle* was the first case by this Court to write on the statute.

The Federal Government only requires us to periodically turn our clocks back one hour; today's majority opinion, however, obviously sees nothing wrong with requiring us to turn our clocks back almost 100 years, and also orders us to close our eyes to what this Court has done during the almost past 100 years regarding interpreting the oral statement statute during that period of time. Rip Van Winkle, are you awake yet? The majority wants to speak with you to learn how you enjoyed your long sleep.

In conclusion, one might argue that the majority opinion by Judge White is advocating the overthrow of "stare decisis." That is not so. I have pointed out many times in the past, as far as this and other appellate courts go, which includes the Supreme Court of the United States, "stare decisis" does not necessarily mean what many members of the Bench and Bar of this State believe it means. History teaches us that this Court and many other appellate courts, including the Supreme Court of the United States, long ago replaced "stare decisis" with the "Rule by the Gang of Five," i.e., when at least five members, or at least a majority of an appellate court decide to vote a certain way, that is the real "stare decisis." Of course, one might argue that that is merely setting policy, thus acting legislatively, and not acting judiciously, or writing law, which is the usual role of an appellate court.

To this Court's aggressive and assertive majority opinion, because it at least implicitly overrules almost 100 years of this Court's sound case law interpreting Art. 38.22, § 3(c), V.A.C.C.P., and that statute's precursors, apparently in order to solely enact new "policy" in this area of the law, or to affirm appellant's conviction, I respectfully dissent.

### APPENDIX A

TRACING THE DEVELOPMENT OF ARTICLE 38.22(3)(c) OF THE TEXAS CODE OF CRIMINAL PROCEDURE AS IT RELATES TO STATEMENTS CORROBORATED BY THE DISCOVERY OF PHYSICAL EVIDENCE IN MURDER CASES FROM 1912 TO 1988

*Ortiz v. State,* 68 Tex.Crim. 524, 151 S.W. 1056 (1912) (recovery of the deceased's body and watch); *McClure v. State,* 100 Tex.Crim. 545, 272 S.W. 157 (1925) (recovery of murder weapon and vehicle); *Williams v. State,* 115 Tex.Crim. 28, 27 S.W.2d 233 (1930) (recovery of deceased's body and blood spots); *Stelman v. State,* 123 Tex.Crim. 330, 58 S.W.2d 831 (1933) (recovery of the deceased's body and discovery of the cause of death); *Brooks v. State,* 130 Tex.Crim. 561, 95 S.W.2d 136 (1936) (recovery of instruments with which the crime was committed); *Halbert v. State,* 138 Tex.Crim. 592, 137 S.W.2d 1010 (1939) (recovery of pistol); *Torres v. State,* 145 Tex.Crim. 365, 168 S.W.2d 265 (1943) (recovery of pistol); *Alexander v. State,* 151 Tex.Crim. 235, 207 S.W.2d 881 (1948) (recovery of the shoes used to beat the deceased); *Valtiero v. State,* 153 Tex.Crim. 260, 219 S.W.2d 73 (1949) (recovery of the victim's hat); *Buchanan v. State,* 453 S.W.2d 479 (Tex.Crim.App.1970) (recovery of deceased's body and murder weapon); *Dow v. State,* 491 S.W.2d 917 (Tex.Crim.App.1973) (recovery of the shotgun); *Simmons v. State,* 504 S.W.2d 465 (Tex.Crim.App.), *cert. denied,* 419 U.S. 829, 95 S.Ct. 51, 42 L.Ed.2d 54 (1974) (recovery of the deceased's body); *Brantley v. State,* 522 S.W.2d 519 (Tex.Crim.App.1975) (recovery of the deceased's body); *Marini v. State,* 593 S.W.2d 709 (Tex.Crim.App.1980) (recovery of money and narcotics stolen from the deceased); *Curtis v. State,* 640 S.W.2d 615 (Tex.Crim.App.1982) (recovery of the pistol); *Alexander v. State,* 677 S.W.2d 557 (Tex.App.—Beaumont 1983, pet. ref'd) (recovery of the weapon); *Black v. State,* 677 S.W.2d 150 (Tex.App.—Houston [1st Dist.] 1984), *rev'd on other grounds,* 739 S.W.2d 240 (Tex.Crim.App.1987) (recovery of a bullet fired from the murder weapon); *Aguirre v. State,* 683 S.W.2d 502 (Tex.App.—San Antonio 1984, pet. ref'd) (recovery of the shotgun); *Anderson v. State,* 701 S.W.2d 868 (Tex.Crim.App.1985), *cert. denied,* 479 U.S. 870, 107 S.Ct. 239, 93 L.Ed.2d 163 (1986) (recovery of the victim's body); *Ex parte Stansbery,* 702 S.W.2d 643 (Tex.Crim.App.1986) (recovery of the rifle); *Santana v. State,* 714 S.W.2d 1 (Tex.Crim.App.1986) (recovery of the murder weapons); *Briddle v. State,* 742 S.W.2d 379 (Tex.Crim.App.1987), *cert. denied,* 488 U.S. 986, 109 S.Ct. 543, 102 L.Ed.2d 573, (1988) (recovery of machete stolen from the deceased and used to commit the crime); *Cordova v. State,* 754 S.W.2d 502 (Tex.App.—San Antonio 1988, no pet.) (recovery of automobile and discovery of blood spatters, of a .22 caliber casing and one of deceased's shoes); *Covington v. State,* 754 S.W.2d 726 (Tex.App.—Beaumont 1988, pet. requested) (recovery of the murder weapons); and *Perillo v. State,* 758 S.W.2d 567 (Tex.Crim.App.1988) (recovery of automobile and shotgun stolen from the victims).

### APPENDIX B

TRACING THE DEVELOPMENT OF ARTICLE 38.22(3)(c) OF THE TEXAS CODE OF CRIMINAL PROCEDURE AS IT RELATES TO STATEMENTS CORROBORATED BY THE RECOVERY OF STOLEN PROPERTY IN NON–MURDER CASES FROM 1898 TO 1988

*Daggett v. State,* 39 Tex.Crim. 5, 44 S.W. 148 (1898) (chickens); *Goosby v. State,* 106 Tex.Crim. 152, 291 S.W. 237 (1927) (meat); *Turner v. State,* 109 Tex.Crim. 301, 4 S.W.2d 58 (1928) (shoes); *Sweat v. State,*

115 Tex.Crim. 130, 29 S.W.2d 756 (1930) (plumbing fixtures); *Lingo v. State,* 117 Tex.Crim. 582, 35 S.W.2d 153 (1931) (car); *Wright v. State,* 137 Tex.Crim. 118, 128 S.W.2d 61 (1939) (cattle); *Wade v. State,* 138 Tex.Crim. 69, 134 S.W.2d 245 (1939) (stolen property with a value over $50.00); *Lovell v. State,* 138 Tex.Crim. 134, 134 S.W.2d 266 (1939) (hat); *Smith v. State,* 157 Tex.Crim. 637, 253 S.W.2d 665 (1952) (currency and jewelry); *Tawater v. State,* 408 S.W.2d 122 (Tex.Crim.App.1966) (truck); *Rayford v. State,* 423 S.W.2d 300 (Tex.Crim.App.1968) (purse); *Wilson v. State,* 473 S.W.2d 532 (Tex.Crim.App.1971) (vehicle); *Cavett v. State,* 505 S.W.2d 289 (Tex.Crim.App.1974) (keys, stamp machine, adding machine, and watch); *Waller v. State,* 648 S.W.2d 308 (Tex.Crim.App.1983) (typewriter, radio, and other stolen items); *Salazar v. State,* 648 S.W.2d 421 (Tex.App. —Austin 1983, no pet.) (television set); *Gauldin v. State,* 683 S.W.2d 411 (Tex. Crim.App.1984) (currency); *Miller v. State,* 687 S.W.2d 33 (Tex.App.—Corpus Christi 1985), *aff'd on other grounds,* 736 S.W.2d 643 (Tex.Crim.App.1987) (ashes of items from robbery); *Ochoa v. State,* 688 S.W.2d 888 (Tex.App.—Corpus Christi 1985, no pet.) (lawn mower); and *White v. State,* 732 S.W.2d 423 (Tex.App.—Beaumont 1987, pet. ref'd) (cigarettes).