NO. 07-06-0164-CR

IN THE COURT OF APPEALS

FOR THE SEVENTH DISTRICT OF TEXAS

AT AMARILLO

PANEL C

OCTOBER 4, 2007

______________________________

JEROD W. JONES, APPELLANT

V.

THE STATE OF TEXAS, APPELLEE

_________________________________

FROM THE 140TH DISTRICT COURT OF LUBBOCK COUNTY;

NO. 2005-409401; HONORABLE JIM BOB DARNELL, JUDGE

_______________________________

Before QUINN, C.J., and HANCOCK and PIRTLE, JJ.

Appellant, Jerod W. Jones, was convicted by a jury of aggravated assault, enhanced.  He was sentenced to fifty years confinement by the trial court.  In challenging his conviction, he presents three issues by which he maintains (1) the evidence is legally and (2) factually insufficient to show that he intentionally, knowingly, or recklessly committed aggravated assault with a deadly weapon by hitting Tanji Garcia with his vehicle and (3) the trial court erred in overruling his objection to photographs of Garcia’s injuries based on Rule 403 of the Texas Rules of Evidence.  We affirm.

On the evening of May 19, 2005, Appellant, Chad Holmes, and Aaron Holmes  decided to go to the Branch Office Bar and Grill to play pool.  Appellant drove them there in a black Ford truck he had borrowed from his girlfriend, Kelli Ortega.
(footnote: 1)  When he arrived at the bar, Appellant parked in the lot nearest the front of the bar.  After entering the bar, Chad ordered a beer and requested quarters to play pool, but was immediately turned away after Appellant and a male patron exchanged words outside the bar.

Juan Leroy Arriaga testified that he left the bar to go to his car for cigarettes when “three dudes” “started running their mouth[s] and wanting to fight me . . . .”  Arriaga went back in the bar to find his brother, Junior.  A group of people from the bar, the bar’s owner, and the bartender disbanded the group before any fighting broke out and asked Appellant and his friends to leave.  The confrontation occurred in the early morning hours of May 20th.

Appellant and his friends drove to Appellant’s mother’s house.  They were there briefly before realizing that Aaron had left his sandals in the parking lot after removing them in anticipation of a physical encounter.  Aaron testified that except for his work shoes, those sandals were the only other pair of shoes he owned and they decided to return to the bar to retrieve them.  This time, to avoid a conflict, Appellant parked the truck in a shopping center parking lot located across the street from the bar.

According to Chad and Aaron, they didn’t get to search for the sandals because a group (testimony indicates anywhere from six to fifteen persons) exited the bar and began chasing them.  They returned to the truck to drive away as the crowd was yelling and hitting the truck.  Appellant backed out of the parking space, drove over a curb, and ended up in the bar’s parking lot where he struck Tanji Garcia as she was walking toward her boyfriend’s car.  

Appellant drove to Chad’s apartment and parked the truck.  Chad then drove Appellant and Aaron home in his vehicle to avoid being spotted by anyone from the bar who may have followed them.  According to Chad and Aaron’s testimony they did not realize they had struck a pedestrian until it was reported on the news.

Paramedics and law enforcement were called to the scene.  According to a paramedic, Garcia sustained severe injuries to her face.  Police officers interviewed witnesses and found an unopened beer can and a pair of flip flop sandals in the area.  The black truck driven by Appellant was located and hair strands matching Garcia’s hair were found in the right front bumper.  Officers traced the truck to Kelli Ortega.  She testified that she was working that night and had lent her truck to Appellant.  

Standard of Review–Sufficiency of the Evidence

By his first two issues, Appellant challenges both the legal and factual sufficiency of the evidence to support his conviction.
  When both the legal and factual sufficiency of the evidence are challenged, we must first determine whether the evidence is legally sufficient to support the verdict.  
Clewis v. State
, 922 S.W.2d 126, 133 (Tex.Crim.App. 1996).  It is a fundamental rule of criminal law that one cannot be convicted of a crime unless it is shown beyond a reasonable doubt that the defendant committed each element of the alleged offense.  U.S. Const. amend. XIV; Tex. Code Crim. Proc. Ann. art. 38.03 (Vernon Supp. 2006); Tex. Penal Code Ann. § 2.01 (Vernon 2003).  

Evidence is legally insufficient if, when viewed in a light most favorable to the prosecution, a rational trier of fact could not have found each element of the offense beyond a reasonable doubt.  
Jackson v. Virginia
, 443 U.S. 307, 318, 99 S.Ct. 2781, 2789, 61 L.Ed.2d 560, 573 (1979);
 
McKinney  v. State
, 207 S.W.3d 366, 374 (Tex.Crim.App. 2006).  This standard is the same in both direct and circumstantial evidence cases.  
Burden v. State
, 55 S.W.3d 608, 613 (Tex.Crim.App. 2001).  In measuring the legal sufficiency of the evidence to sustain a conviction, we measure the elements of the offense as defined by a hypothetically correct jury charge.  
Malik v. State
, 953 S.W.2d 234, 240 (Tex.Crim.App. 1997).  
This is done by considering all the evidence that was before the jury—whether proper or improper—so that we can make an assessment from the jury's perspective.  
Miles v. State
, 918 S.W.2d 511, 512 (Tex.Crim.App. 1996).  As an appellate court, we may not sit as a thirteenth juror, but must uphold the jury's verdict unless it is irrational or unsupported by more than a “mere modicum” of evidence.  
Moreno v. State
, 755 S.W.2d 866, 867 (Tex.Crim.App. 1988).  

After conducting a legal sufficiency review under 
Jackson
, we may proceed with a factual sufficiency review.  
Clewis
, 922 S.W.2d at 133.  When conducting a factual sufficiency review, we examine all the evidence in a neutral light and determine whether the jury was rationally justified in finding guilt beyond a reasonable doubt.  
Zuniga v. State
, 144 S.W.3d 477, 484 (Tex.Crim.App. 2004), 
overruled in part by
 
Watson v. State
, 204 S.W.3d 404, 415-17 (Tex.Crim.App. 2006).  We cannot reverse a conviction unless we find some objective basis in the record that demonstrates that the great weight and preponderance of the evidence contradicts the jury’s verdict.  
Watson
, 204 S.W.3d at 417.  In other words, we cannot conclude that Appellant’s conviction is “clearly wrong” or “manifestly unjust” simply because we disagree with the jury’s verdict
.  Id.
; 
Cain v. State
, 958 S.W.2d 404, 407 (Tex.Crim.App. 1997).

A person commits an assault if the person either intentionally, knowingly, or recklessly causes bodily injury to another.  
Tex. Penal Code Ann. 
§ 22.01(a)(1)
. 
 A person commits an aggravated assault if the person commits an assault as defined in § 22.01 and the person either causes serious bodily injury to another, or uses or exhibits a deadly weapon during the commission of the assault.  
§ 22.02(a).  Thus 
the State was required to prove that Appellant
 intentionally, knowingly, or recklessly caused serious bodily injury to Garcia 
or
 used or exhibited a deadly weapon during the commission of the assault.
(footnote: 2)
     The evidence established that Appellant was driving the black Ford truck that struck Garcia and caused severe facial injuries.  Several police officers testified that the vehicle Appellant was driving was capable of causing death or serious bodily injury.  
See
 § 1.07(a)(17)(B) (defining deadly weapon).  Accordingly, Appellant challenges the sufficiency of the evidence as it pertains to the element of intent and maintains that Garcia’s injuries were the result of a “terrible accident.” 

 The court’s charge included all three culpable mental states.  Because the State alleged all three theories of mental culpability, the evidence is sufficient to support Appellant’s conviction if it establishes that he acted with any one of three mental states charged in the indictment.  
Rogers v. State
,
 
774 S.W.2d 247, 251 (Tex.Crim.App. 1989), 
cert. denied
, 493 U.S. 984, 110 S.Ct. 519, 107 L.Ed.2d 520 (1989), 
overruled on other grounds
, 
Peek v. State
, 106 S.W.3d 72, 79 (2003); 
Paschal v. State, 
35 S.W.3d 80 (Tex.App.–Texarkana 2000, no pet.).  Thus, we will review the evidence to determine if it is sufficient to establish that Appellant acted recklessly in causing Garcia’s injuries.  

A person acts recklessly, or is reckless, with respect to circumstances surrounding his conduct or the result of his conduct when he is aware of but consciously disregards a substantial and unjustifiable risk that the circumstances exist or the result will occur.  § 6.03(c).  The risk must be of such a nature and degree that its disregard constitutes a gross deviation from the standard of care that an ordinary person would exercise under all the circumstances as viewed from the actor’s standpoint.  
Id
.  Whether a defendant committed an offense with the requisite mental state is a question of fact to be determined by the trier of fact from all the evidence presented.  
Hemphill v. State
, 505 S.W.2d 560, 562 (Tex.Crim.App. 1974);
 
State v. Hart, 
905 S.W.2d 690, 693 (Tex.App.–Houston [14th Dist.] 1995, pet. ref’d).
 
 A culpable mental state may be inferred from circumstantial evidence such as acts, words, and the conduct of the accused.  
See Guevara v. State
, 152 S.W.3d 45, 50 (Tex.Crim.App. 2004).  
See also
 
Moore v. State
, 969 S.W.2d 4, 10 (Tex.Crim.App. 1998).

According to Juan Leroy Arriaga’s testimony, when the bar closed, he and his friends went outside into the parking lot and noticed that Appellant and his two friends had returned.  He speculated they were there waiting for them to come out of the bar.  Arriaga claimed that Appellant and his friends were crossing the street toward him and his group so they crossed the street to meet them halfway.  They argued and were going to fight when Appellant and his friends ran back to their truck.  Arriaga denied that any weapons or pool cues were brandished.  Arriaga’s recollection then places him, his brother, Junior, and Tanji Garcia in the bar parking lot walking to Junior’s car.  He testified that Appellant then drove his truck over the curb of the street adjoining the bar parking lot and that as he and Junior jumped to the left, Garcia went right and was struck by Appellant.

Garcia testified that when she and her friends left the bar, Appellant and his friends approached her group and words were exchanged, but the confrontation did not escalate into a fight.  According to her version, she let go of Junior’s hand and began walking by herself to his car in the back of the bar parking lot.  A crowd was still in the bar parking lot, but she was unaware of the details of what ensued between the crowd and Appellant and his friends.

Appellant’s friends, Chad and Aaron, both testified that Arriaga’s group was brandishing pool cues and knives and chasing them.  Appellant, Chad, and Aaron ran back to the truck and backed out of an angled parking space as the crowd was yelling and hitting the truck.  According to Chad, the natural direction to drive after backing out of the angled parking space was away from Arriaga’s group.  However, both Chad and Aaron testified that Appellant turned the truck around after backing out of the space so as to face the crowd he and his friends were fleeing from.  Being unable to make a right turn onto the street because of the crowd, Appellant and his friends avoided the crowd by jumping a curb and driving through the bar parking lot.  This resulted in Garcia being struck by the truck.

From the circumstantial evidence presented, the jury could have inferred that Appellant was aware of, but consciously disregarded, the substantial and unjustifiable risk of fleeing from a crowd in a truck, jumping over a curb, and driving through the bar parking lot.  Appellant disregarded the easiest exit from the shopping center parking lot by backing out of the parking space and turning the truck around so as to face the crowd his friends claimed they were trying to avoid.  Appellant acted recklessly and created the risk of striking a pedestrian by driving toward a crowd instead of exiting the parking lot in the opposite direction, which would have been the natural direction to take.

Although the evidence is conflicting on whether weapons were brandished and who instigated the confrontation, the jury, as the trier of fact, determined that Appellant struck Garcia and that, at that time, he had the requisite mental state to be convicted of aggravated assault.  We conclude that under 
Jackson
, the evidence was legally sufficient to support Appellant’s conviction.  Issue one is overruled.

Appellant asserts that the evidence supports his conclusion that Garcia’s injuries were the result of a “terrible accident” and that he did not have the requisite criminal intent to commit the offense of aggravated assault.  From a review of the most important and relevant evidence discussed hereinabove,
(footnote: 3) we cannot conclude under 
Watson
, that Appellant’s 
conviction was “clearly wrong” or “manifestly unjust.”  Thus, the evidence is also factually sufficient to support Appellant’s conviction.  Issue two is overruled.

By his third and final issue, Appellant contends the trial court erred in overruling his objection to photographs of Garcia’s injuries based on Rule 403 of the Texas Rules of Evidence.  We disagree.  

Standard of Review–Rule 403

A trial court’s ruling in response to a Rule 403 objection is reviewed for abuse of discretion.  
State v. Mechler
, 153 S.W.3d 435, 439 (Tex.Crim.App. 2005).  The test for whether the trial court abused its discretion is whether the action was arbitrary or unreasonable.  
Id.
  We will not reverse the trial court’s ruling if it is within the zone of reasonable disagreement.  
Id
. at 440.  In determining whether the probative value of evidence is substantially outweighed by the danger of unfair prejudice, a court should consider (1) the probative value of the evidence; (2) the potential to impress the jury in some irrational, yet indelible way; (3) the time needed to develop the evidence; and (4) the proponent’s need for the evidence.  
Erazo v. State
, 144 S.W.3d 487, 489 (Tex.Crim.App. 2004).

In determining the prejudicial effect of photographs, courts may consider the number of photographs offered; their gruesomeness, detail, and size; whether they are in color; whether they are taken close-up; whether the person in the photograph is clothed; and any other factors unique to the situation.  
Shuffield v. State
, 189 S.W.3d 782, 787 (Tex.Crim.App. 2006); 
Long v. State
, 823 S.W.2d 259, 270 (Tex.Crim.App. 1991).

Outside the jury’s presence, the trial court heard Appellant’s objections to State’s Exhibits 19 through 28 depicting Garcia’s severe facial injuries.  The objections were based on Rules 401, 402, and 403 of the Texas Rules of Evidence.
(footnote: 4)  Of the ten photographs, the trial court permitted the State to select one photograph from three separate groups showing three different angles of Garcia’s face.  The State chose Exhibits 20, 23, and 26, and Appellant’s objections to those photographs were overruled.

All three photographs are approximately three by five inches and show only Garcia’s face.  Exhibit 20 is a right center view of her face; Exhibit 23 is a frontal view of her face; and Exhibit 26 shows the left side of her face.  Although the photographs in the appellate record appear in black and white, we will assume they were presented to the jury in color.  
See Shuffield
, 189 S.W.3d at 787.  The photographs were taken by Dr. John Marchbanks just prior to performing surgery.  Dr. Marchbanks testified that he was called in to consult on Garcia’s facial injuries, but did not offer any testimony describing the injuries.

Serious bodily injury is an element of aggravated assault the State was required to prove.  § 22.02(a) (1).  The photographs were offered into evidence for the purpose of establishing that element.  Appellant, however, argues that their admission was cumulative because a paramedic and a police officer who were dispatched to the scene gave graphic descriptions of Garcia’s injuries during their testimony.  He further urges that Garcia’s injuries were obvious when she testified.  Appellant contends that the probative value of the photographs was outweighed by their prejudicial effect.  However, as the State points out, the photographs actually served to soften the testimonials of Garcia’s injuries.  

The paramedic testified that he had never seen trauma like that sustained by Garcia.  He described her face as disfigured, “literally ripped apart.”  He continued that her features were unrecognizable.  He did not know where her mouth was and her nose was “just shredded.”  He didn’t know if her eye had been ripped out.  One of the responding police officers testified that Garcia’s face looked like it “exploded.”  The objected-to photographs, on the other hand, depict Garcia’s face cleaned up in preparation for surgery.  They show Garcia’s injuries in a less gruesome manner than described by the testimony of the paramedic and police officer.

Photographs provide powerful visual evidence of an offense.  
See Sonnier v. State
, 913 S.W.2d 511, 519 (Tex.Crim.App. 1995).  A trial court does not abuse its discretion in admitting into evidence gruesome photographs of a victim.  
Id
.  We conclude the photographs were relevant and were not overly gruesome, and the trial court did not abuse its discretion in admitting them.  Issue three is overruled.

Consequently, the trial court’s judgment is affirmed.

Patrick A. Pirtle

      Justice

Do not publish.ant, the magistrate, in using a common-sense approach, could reasonably have concluded that the word “for” was a typographical error and that the word intended was “from.”  
See
 
Olivarri v. State
, 838 S.W.2d 902, 905 (Tex.App.--Corpus Christi 1992, no pet.).  We defer to such determination, as did the trial court.  The trial court did not err in failing to grant appellant’s motion to suppress.  We overrule issue four.

  ISSUES FIVE AND SIX:  ORAL STATEMENTS 

BY APPELLANT AFTER ARREST

Appellant was outside when officers executing the search warrant approached the house to be searched.  He was detained while officers searched the house.  In the house officers found what appeared to be quantities of methamphetamine, drug paraphernalia, and equipment and supplies consistent with a methamphetamine manufacturing operation.  Appellant was then placed under arrest and given 
Miranda
(footnote: 4) warnings.  Following his arrest, appellant made oral statements which the State offered and the trial court admitted at trial.  The exact points at which the statements were made are not clear from the record.  The statements were unquestionably made (1) during the time the officers were completing the search of the house and securing evidence they found; (2) after appellant had been arrested and given 
Miranda
 warnings
(footnote: 5); and (3) without having been recorded or videotaped. 

The first statement was, “I knew sooner or later this was bound to happen.”  The next was, “Handle the tanks with anhydrous carefully.  They will be okay.”  The third was, “Don’t spill the liquid from the glass vase located in the front room.”  The last was in regard to some glass jars containing liquid, “You might as well put them with everything else that tested positive.” 

By his issues numbers five and six, appellant asserts that the oral statements should have been excluded from evidence because (1) they were the product of a search and seizure based on an illegal search warrant, (2) the provisions of 
CCP
 article 38.22 were not complied with, and (3) since article 38.22 was not complied with, the statements could only have been admitted as 
res gestae
 statements, and they did not qualify as such.  Appellant asserts that his statements were not in the nature of excited utterances, he was not emotionally stimulated, or in the grip of any shocking event, and relies on 
Smith v. State
, 514 S.W.2d 749 (Tex.Crim.App. 1974).  

The State asserts that the statements are 
res gestae
 of the arrest and offense, and are admissible under article 38.22 § 5.  The State refers us to 
Etheridge v. State
, 903 S.W.2d 1 (Tex.Crim.App. 1994).    

We have previously determined that the search warrant was valid.  Thus, appellant’s allegation that the trial court erred in refusing to exclude the statements as the product of an illegal search is without merit.

Article 38.22 § 5 provides:

Nothing in this article precludes the admission of a statement made by the accused . . . that is the res gestae of the arrest or of the offense, . . . .

In 
Smith
, officers were in the process of searching a residence pursuant to a search warrant when Smith entered the house.  Smith was arrested and given 
Miranda
 warnings.  Approximately 10-15 minutes later, one of the officers showed Smith a bag found under a bed mattress and asked Smith what it was.  Smith responded that it was his and was “stuff,” which was interpreted at trial to indicate heroin.  The Court of Criminal Appeals held that Smith’s statements were not admissible as 
res gestae
 statements.  In so holding, the Court noted that the statements were not made spontaneously, were in answer to questioning by an officer some 10-15 minutes after the arrest, and the record was silent as to whether Smith was in a condition of excitement, emotional stimulation or in the grip of any shocking event.  
See
 
Smith
, 514 S.W.2d at 753.  
Etheridge
, relied on by the State, 
distinguished 
Smith
 on the facts in determining that defendant’s post-arrest confession was admissible.  In  
Etheridge
, the record contained evidence that the defendant was in an emotional state when he made the post-arrest confession to having killed the victim.  
See
 
Etheridge
, 903 S.W.2d at 15.

Statements by defendants which are classified as 
res gestae
 statements can be either statements (1) made while a defendant is in an emotional, excited state or in the throes of a shocking event or (2) statements which are described as verbal acts.  
See
 
Ramos v. State
, 419 S.W.2d 359, 362-64 (Tex.Crim.App. 1967) (statement admissible under verbal act doctrine “sometimes referred to as the so-called 
res gestae
 rule”).  In 
Jones v. State
, 458 S.W.2d 654 (Tex.Crim.App. 1970), the appellant was a passenger in a vehicle which was stopped because of the driver’s possible intoxication.  During the stop, Jones exited the vehicle and was interrogated by officers concerning a bottle of pills found in the glove compartment.  Appellant made statements that he and the driver had purchased the pills in Mexico.  The Court of Criminal Appeals held that even in the absence of a showing of spontaneity to justify admission under the “true 
res gestae
 rule,” the statements were admissible under the verbal act doctrine, or “so-called” 
res gestae
 rule.  
Id
. at 656.  And, in 
Harryman v. State
, 522 S.W.2d 512 (Tex.Crim.App. 1975), Harryman was arrested and searched for weapons.  During the search, a condom tied in a knot and containing several smaller condoms was discovered inside his belt.  The searching officer asked Harryman, “What is this?”, to which he replied that it was heroin.  Citing CCP 38.22, 
Jones
, and other precedent, and without discussion of whether the record contained evidence of Harryman’s state of mind or the spontaneity of the statement, the Court of Criminal Appeals held that admission of the statement as 
res gestae
 of the arrest was not reversible error.  
Harryman
, 522 S.W.2d at 516-17.

The trial court could have, within its discretion, determined that appellant’s first statement (
“I knew sooner or later this was bound to happen.”
) was 
res gestae
 of the arrest.  Admission of the statement was not an abuse of discretion.  Even if appellant’s first statement was admitted in error, however, after examining the record as a whole and in a neutral light, we conclude that its admission was harmless.  
See
 
TRAP
 44.2(b); 
Johnson v. State
, 967 S.W.2d 410, 417 (Tex.Crim.App. 1998).
 

 
We need not decide if the remainder of appellant’s statements were admissible as either true 
res gestae 
or verbal act 
res gestae
.  
The trial court's action in admitting evidence is not error
 if the evidence is admissible for any purpose, regardless of the reason for admitting the evidence.  
See
 
Sewell v. State
, 629 S.W.2d 42, 45 (Tex.Crim.App. 1982)
.  CCP 38.22 § 3(c) provides that § 3(a) does not apply to preclude admission of a statement which contains assertions of facts or circumstances that are found to be true and which conduce to establish the guilt of the accused.  The provisions of § 3(c) do not limit the manner in which the facts asserted are found to be true.  
See
 
Briddle v. State
, 742 S.W.2d 379, 388 (Tex.Crim.App. 1987).  Subsequent corroboration suffices.  
See
 
Port v. State
, 791 S.W.2d 103, 107 (Tex.Crim.App. 1990).  If one of multiple assertions in the statement is found to be true and conduces to show the guilt of the accused, then the statement in its entirety is admissible.  
Id
. 

With the exception of the first statement complained of by appellant (
“I knew sooner or later this was bound to happen.”)
, the statements dealt with factual matters concerning contents of drug paraphernalia 
found by the officers in the house being searched.  The statements described the contents of tanks as anhydrous ammonia; described the contents of a glass vase in the front room as a liquid; and effectively stated that the contents of glass jars would test “positive.”  All three statements later proved to be factually correct and conduced with other evidence to prove appellant’s 
guilt of the crime charged.  The trial court did not abuse its discretion in admitting the statements.  
See
 
id
.  

We overrule issues five and six. 

ISSUE SEVEN:  LESSER-INCLUDED OFFENSE CHARGE 

Appellant’s seventh issue urges that the trial court erred in denying his requested lesser-included charge for possession of only 200-400 grams of methamphetamine.  In presenting his issue, he references testimony of his chemist expert Courtney as to how much methamphetamine would be produced if “. . . you took the chemicals in [exhibits] 6, 7 and 8 in the stage that they are right now and went to the final product . . . .”  Courtney estimated that the methamphetamine finally produced from the exhibits, were it processed to completion, would probably be “around-somewhere around half of [400 grams].”

The State counters that the testimony referenced by appellant is no evidence of weight of the controlled substance which appellant was indicted for possessing because the substance appellant possessed was not in final form, but was a mixture, solution or other substance containing the controlled substance.  As such, the statute defined “controlled substance” as the aggregate weight of the entire liquid containing methamphetamine as well as the methamphetamine in solution.  Further, the State urges that the error, if any, was harmless because the punishment range for possession of 400 grams or more is 25 years to life and the punishment range for possession of 200-400 grams is 10 years to life.  The State reasons that since appellant was sentenced to 95 years incarceration, conviction of the lesser offense of 200-400 grams would not have resulted in a lesser sentence.     

To determine if a defendant is entitled to a lesser-included offense instruction, a two prong test applies:  (1) the lesser-included offense must be included within the proof necessary to establish the offense charged, and (2) some evidence must exist in the record that would permit a jury rationally to find that if the defendant is guilty, he is guilty only of the lesser-included offense.  
See
 
Lofton v. State
, 45 S.W.3d 649, 651 (Tex.Crim.App. 2001); 
Wesbrook v. State
, 29 S.W.3d 103, 113 (Tex.Crim.App. 2000)
.  

The State is correct that Courtney’s testimony is no evidence that appellant possessed only 200-400 grams of controlled substance.  The testimony referred to was a hypothetical question based on different facts from those in evidence.  The hypothetical asked Courtney to assume a change in the composition and weight of the substance in appellant’s possession based on “cooking” of the substances beyond the stage in which they were found during the search.   Because there is no evidence which would have permitted the jury to rationally find that appellant was guilty only of possessing 200-400 grams of methamphetamine, the trial court did not err in refusing to charge the jury on a lesser-included offense.  We also agree with the State that even if refusal to charge the jury on the lesser offense was error, the error was harmless given the punishment assessed by the jury.  
See
 TRAP 44.2(b).  

ISSUE EIGHT:  SUFFICIENCY OF EVIDENCE

OF WEIGHT OF METHAMPHETAMINE

Issue eight challenges the legal sufficiency of the evidence that appellant possessed 400 or more grams of methamphetamine.  He relies on various authorities, including 
Cawthon v. State
, 849 S.W.2d 346 (Tex.Crim.App. 1992), to support his assertion that the State failed to prove the weight of the methamphetamine which appellant was charged with possessing.  He posits that the State’s proof was insufficient because it did not prove the weight of the actual methamphetamine and the weight of the other substances in which the drug was found or with which it was mixed.  The State responds that 
Cawthon
 is inapplicable because the statute under which appellant was convicted had been amended and differed from that under consideration in 
Cawthon
, and because the definition of “controlled substance” under which appellant was charged did not require proof of the separate weights of the methamphetamine and any dilutants or other substances with which the methamphetamine was mixed.  We agree with the State. 

Under 
Cawthon
, the State was required to prove that an adulterant or dilutant added to the illegal substance (methamphetamine), with intent to increase the quantity, did not affect the activity of the illegal substance.  The statute under which appellant was convicted is not so formulated as was the statute under consideration in 
Cawthon
.  
At the time of appellant’s indictment, the definition of “controlled substance” included a drug, an adulterant, a dilutant, and an immediate precursor, 
see
 
Tex. Health & Safety Code Ann
. § 481.002(5) (Vernon 2003), and “adulterant or dilutant” was defined by the statute as any material that increases the bulk or quantity of a controlled substance, regardless of its effect on the chemical activity of the controlled substance.  
Tex. Health & Safety Code
 § 481.002(49) (Vernon 2003).  
Cawthon
 is inapposite to the matter before us.    

As an appellate court reviewing a challenge to the legal sufficiency of the evidence, we consider all the record evidence, including direct and circumstantial, both admissible and inadmissible, in the light most favorable to the jury’s verdict.  We then determine if any rational jury could have found all the essential elements of the offense beyond a reasonable doubt based upon such record evidence.  
See
 
Jackson v. Virginia
, 443 U.S. 307, 319, 99 S.Ct. 2781, 2789, 61 L.Ed.2d 560 (1979)
.  A reviewing court is to presume that the evidence is legally sufficient to support the jury verdict.  
See
 
Johnson v. State
, 23 S.W.3d 1, 11 (Tex.Crim.App. 2000). 

Both the State and appellant presented chemist witnesses who testified to the weight and composition of the methamphetamine, mixtures of liquids containing methamphetamine, and precursors of methamphetamine seized from the house searched when appellant was arrested.  The chemists’ testimony was in agreement that the weight of powder, liquids containing some levels of methamphetamine and precursors of methamphetamine exceeded 400 grams.  Appellant argues that the weight of pure methamphetamine without any dilutants or adulterants (i.e., with the chemicals and some or all of the dilutants and adulterants removed by further processing of the mixtures) would have been less than 400 grams.
(footnote: 6) 

Under the statutory definition, which the trial court included in the jury charge, the State did not have to prove that the amount of “pure” methamphetamine was 400 grams or more, or that dilutants did not affect the chemical activity of the methamphetamine.  The evidence was legally sufficient to support a jury finding that the amount of controlled substance in question was 400 grams or more.  We overrule issue eight.                

ISSUE NINE:  ALLOWING STATE TO EXPAND  

INDICTMENT VIA THE JURY CHARGE

By his issue nine, appellant complains that the jury charge allowed the State to expand the scope of the crime for which the jury could convict appellant from the crime charged in the indictment.  His objection at trial was that the charge defined “controlled substance” as including the aggregate weight of any mixtures, solution or other substance contained in a controlled substance, while the indictment only indicted for possession of methamphetamine.  

As previously noted, appellant was indicted for “intentionally or knowingly possess[ing], with intent to manufacture, a controlled substance, namely, methamphetamine, in an amount of 400 grams or more.”  
See
 
Tex. Health & Safety Code
 §§ 481.112, 124 (Vernon 2003).  The jury was charged in accordance with the language of the indictment and found appellant guilty of “possession of a controlled substance, methamphetamine in an amount of 400 grams or more, with intent to manufacture, as alleged in the indictment.”  The jury was instructed, in part, that (1) methamphetamine was a controlled substance and (2) “‘controlled substance’ means a substance, including a drug, an adulterant, a dilutant, and an immediate precursor.  The term includes the aggregate weight of any mixture, solution, or other substance containing a controlled substance.”  The definition of controlled substance conformed to the statutory definition.

Appellant cites no authority for his position other than general authority for the proposition that the jury charge should not enlarge the crime pled in the indictment.  In regard to such position he references 
Garcia v. State
, 640 S.W.2d 939 (Tex.Crim.App. 1982).  

Under the record before us, appellant’s reliance on 
Garcia
 is misplaced.  In 
Garcia
, the defendant was charged with hindering an arrest “intentionally with intent to hinder” the arrest.  The jury was charged to find the defendant guilty if the defendant “knowingly or intentionally” hindered the arrest.  The jury charge was held to have been defective in two ways for allowing the defendant to be convicted for knowingly 
or
 intentionally hindering the arrest: (1) the inclusion of “knowingly” resulted in the jury charge allowing conviction for acts which were not a crime under the statute which proscribed only actions taken with intent to hinder an arrest; and (2) the jury charge allowed conviction for a “knowingly” 
mens rea
 which was not included in the indictment.  
Id
. at 941. 

By his issue, appellant does not urge that the charge allowed conviction for actions which were not a crime.  Neither does he claim that the definition of controlled substance did not conform to the statute nor that the instruction that the weight of the substance included the aggregate weight of any mixture, solution or other substances containing a controlled substance was erroneous.  Appellant’s written Exception To Form of Indictment stated that he was charged by indictment “with the offense of Possession with Intent to Manufacture a Controlled Substance.”  The exception urged that the indictment failed to specify 
what
 he “possessed with the intent to manufacture a controlled substance, to wit; methamphetamine [sic]”.  At the pre-trial presentation of the exception, the State responded to appellant’s exception argument by specifying that the indictment specified, and the State’s proof would be, that appellant possessed two different substances which comprised methamphetamine: (1) the finished product, and (2) product that was still in the process of being manufactured, which was not finished, but which nevertheless contained methamphetamine.  The charge did not enlarge the indictment.  Issue nine is overruled. 

ISSUE TEN:  SUFFICIENCY OF THE INDICTMENT

Issue ten asserts that the trial court erred in failing to quash the indictment or to dismiss the charges against appellant because the language of the indictment did not give him sufficient notice of the charge against him.  He claims that the indictment language that he  “intentionally or knowingly possess[ed], with intent to manufacture, a controlled substance, namely, methamphetamine, in an amount of 400 grams or more” did not give him adequate notice to prepare his defense to the State’s proof that the weight of the methamphetamine included adulterants and dilutants.  He alleges that, had he been on notice that the State was going to prove the weight of the methamphetamine, including dilutants and adulterants, his entire trial strategy would have been different.  

Appellant’s written Exception to Form of Indictment was filed on the morning the case was to go to trial.  The written Exception specified that the indictment failed to allege what substances appellant possessed with the intent to manufacture a controlled substance, to wit: methamphetamine.  When presenting the written Exception to the indictment at a pre-trial hearing, trial counsel did not assert that the indictment did not give notice of the weight of methamphetamine in question or how the weight was to be calculated.  Rather, the presentation made to the trial court conformed to the written pleading:  the indictment did not state what materials were possessed out of which appellant was allegedly going to manufacture methamphetamine.  

To preserve error for appellate review, the issue on appeal must correspond to the objection made at trial.  
See
  
Dixon v. State
, 2 S.W.3d 263, 265  (Tex.Crim.App. 1998).  
 Appellant’s complaint on appeal does not conform to his written exception or to the objection presented to the trial court. 

Moreover, appellant offers no reference to record evidence supporting the assertion that his trial strategy would have been different.  An appellant urging harm from a trial court’s error does not have the burden to prove harm from the error.  
See
 
Ovalle v. State
, 13 S.W.3d 774, 787 (Tex.Crim.App. 2000).  Rather, the appellant is required only to suggest, in light of the record, how prejudice may have occurred.  
Id
.  At that point, the reviewing court must make its determination as to what effect, if any, the error had.  
Id
.  
Appellant does not point out, nor does our review of the record reveal, evidence that appellant was harmed by the indictment’s language.  
See
 
TRAP
 44.2.  

Appellant’s issue ten is overruled.  

CONCLUSION

Having overruled appellant’s issues, we affirm the judgment of the trial court. 

 

Phil Johnson

Chief Justice

Do not publish.  

FOOTNOTES
1:
At the time of trial, Kelli and Appellant were married; however, through voir dire testimony it was established that they were not married at the time of the incident and thus, no spousal privilege applied to any communications made at that time.

2:
Although the statute is worded disjunctively, Appellant was indicted for causing serious bodily injury 
and 
using a deadly weapon.  The court’s charge tracks the indictment.

3:
Sims v. State,
 99 S.W.3d 600, 600-601 (Tex.Crim.App. 2003); 
Roberts v. State, 
221 S.W.3d 659, 665 (Tex.Crim.App. 2007).

4:
On appeal, Appellant limits his argument to Rule 403.

4:
5:
On appeal, Appellant limits his argument to Rule 403.

6: